JANVIER, Judge.
Plaintiff, Paul Tauzier, a pedestrian, was struck and seriously injured by an automobile owned and operated by Ralph Frank Bondio, a minor 19 years of age, who, at the time, was living with his parents, Mr. and Mrs. Frank L. Bondio. As a result of the breaking of both the tibia and the fibia of plaintiff’s right leg, it became necessary that the leg be amputated.
Alleging that the accident had been caused solely by negligence on the part of young Bondio and that he himself had been to no extent at fault, Tauzier brought this suit against young Bondio and also against his father, Frank L. Bondio “individually and as administrator of the estate of his unemancipated minor son,” praying for sol-idary judgment against them in the sum of $25,002.50.
Defendants answered admitting the occurrence of the accident but denying that young Bondio had been at fault, and in the alternative, averring that the accident had been caused by the contributory negligence of Tauzier himself.
In the District Court there was judgment dismissing plaintiff’s suit and the matter is now before us on devolutive appeal.
The accident occurred at about 8:00 o’clock on the very rainy evening of March 4, 1950, near the corner of North Miro Street and St. Roch Avenue, in New Orleans. St. Roch Avenue is a double driveway thoroughfare having a neutral ground between the two roadways. North Miro Street has a single roadway and crosses St. Roch Avenue at a right angle.
Tauzier had alighted from a public bus and states that he was attempting to walk down North Miro Street across St. Roch Avenue and that he intended to go one block further along North Miro Street to Paris Avenue on which he lived.
Young Bondio was driving the automobile on North Miro Street and decided to turn to his left into the upper roadway of St. Roch Avenue, which roadway was 30 feet in width and was the roadway across which Tauzier was walking when he was struck. Tauzier had crossed the upper roadway of St. Roch Avenue and the neutral ground, and he says that, as he was walking from the neutral ground to the upper sidewalk of St. Roch Avenue, he noticed that there was a parked automobile which was standing alongside the curb of St. Roch Avenue and which directly blocked the pedestrian’s walkway on which he intended to continue his course up North Miro Street. He says that therefore instead of going directly across at the usual pedestrian lane, he found it necessary to turn a few feet to his left in order to pass around the front end of the parked car and then step from the roadway to the sidewalk of St. Roch Avenue and that thus when the accident occurred, though he was not at the pedestrian crossing, he was only about 10 or 15 feet to the left of it.
As Tauzier was crossing St. Roch Avenue, young Bondio in the automobile was *698 proceeding up North Miro Street in the same direction in which Tauzier was walking and after he had completed his turn to the left, the lights of his car shown upon Tauzier who, Bondio says, was at that time about five feet from the front of the automobile. Tauzier was struck and knocked down. The fractures of his leg resulted and ultimately it was amputated.
It is contended by Tauzier that young Bondio was not maintaining a proper lookout ; that his attention was diverted to another pedestrian; that one of the lights of the car was broken; that the windshield wiper was not in operating condition, and that had Bondio been on the alert and had the car been properly equipped, the presence of Tauzier would easily have been discovered and the car brought to a stop before it could strike him.
Bondio, on the other hand, asserts that Tauzier was not crossing at or near the usual pedestrian lane but was at a point at which he, Bondio, had no reason to anticipate that a pedestrian would be crossing. He denies that the windshield wiper on the car was not working and he states that both of his headlights had been working and that one of them was broken by contact with Tauzier or with some object which Tauzier was carrying in his hand.
Bondio says that he could not discover the presence of Tauzier sooner than he did because his car was turning to his left and the lights therefore did not focus upon Tau-zier until the turn had been completed, and also because of the fact that it was raining rather heavily at the time; that the clothing of Tauzier was quite dark in color and, as already stated, because there was no reason for him to anticipate that Tauzier would be crossing some distance from the pedestrian lane.
Bondio says that when he first saw Tau-zier he was standing in the road. Tauzier, however, says that he was walking across and we have no doubt that his gait was as accelerated as he could make it, since it was raining “a slight downpour” and he had no raincoat or other protection against the weather. He was, to some extent, lame before the accident, but in spite of this we feel sure that he was going as fast as he could and that thus he was approaching the point at which he was struck from Bon-dio’s left so that the lights would not have shown upon him until the car had practically completed its turn.
There is a controversy over the question of just how far from the corner Tauzier was when he was struck. Bondio contends that he was 40 or 45 feet from the usual crossing.
The evidence leaves no doubt at all that Tauzier was carried to a residence on St. Roch Avenue which was 30 feet or more from the corner. Tauzier says that this was because he was first picked up by Bondio, placed in his car and driven a few feet from the point at which the accident had occurred, and that, since he insisted that he desired to go to the hospital in an ambulance, young Bondio, after driving for 25 or 30 feet, took him out of the car and into the residence in question. Bondio, on the other hand, says that he did not pick up Tauzier, and other evidence, especially that of Mrs. Carl Wonderly into whose residence Tauzier was carried, indicates that the accident occurred in front of her residence, which was at least 30 feet from the usual crossing.
Counsel for plaintiff seeks to convince us that young Bondio was not telling the truth in several instances, and he points to the fact that in the statement which Bondio made immediately after the accident, he placed the other pedestrian to whom his attention was partially diverted at one part of the intersection, whereas in his testimony in Court he placed this pedestrian at quite a different point.
Our conclusion is that young Bondio was not at fault. The car was being operated at a reasonable speed. Because of the rain and the color of the clothing of Tauzier and also because, as the record shows, that intersection was very poorly lighted, it cannot *699 be said that he was at fault in not discovering the presence of Tauzier sooner than he did.
Counsel for plaintiff places great reliance on what he says is the similarity of the facts here to those found in Jackson v. Cook, 189 La. 860, 181 So. 195. The doctrine which was applicable in that case has, of course, been followed in many cases since, but we do not think it applicable here for the reason that although, when young Bondio commenced his turn, Tauzier was some distance away, at that time the headlights of the automobile were not focused upon him and there was no reason why Bondio should have discovered his presence sooner than he did.
The District Judge found Bondio without fault. We find no error in that conclusion.
Accordingly, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.
REGAN, J., absent, takes no part.