111 So.2d 756 (1959)
237 La. 516
Paul TAUZIER
v.
Frank L. BONDIO, Individually and as Administrator of the Estate of Ralph F. Bondio.
No. 43649.
Supreme Court of Louisiana.
March 23, 1959.
Rehearing Denied June 1, 1959.
*757 Edgar Corey, New Orleans, for plaintiff and appellant.
M. C. Scharff, Frank P. Lucia, New Orleans, for defendants-appellees and respondents.
HAWTHORNE, Justice.
Plaintiff Paul Tauzier seeks to recover damages for injuries sustained as a result of being struck by an automobile driven by Ralph Frank Bondio, the 19-year-old minor son of the defendant Frank L. Bondio. Plaintiff suffered a compound fracture of the tibia and the fibula of his right leg, and due to infection which subsequently set in, the leg had to be amputated above the knee.
After trial on the merits the district court rejected plaintiff's demands, and the Court of Appeal for the Parish of Orleans affirmed this judgment. See 95 So.2d 696. We granted plaintiff's application for a writ, and the case is before us under our supervisory jurisdiction.
The accident involved in this case occurred around 8:00 p. m. on March 4, 1950, near the corner of North Miro Street and St. Roch Avenue in the City of New Orleans. It was a dark, rainy night, and there was no street light at the corner near which the accident happened. In fact, plaintiff himself states that it was "pitch dark, there was no light at the corner at all".
Plaintiff, who was on his way home, alighted from a bus at the downtown lake side of North Miro Street at the intersection of St. Roch Avenue, crossed North Miro to the river side of that street, and started across St. Roch in the direction of Canal Street. After reaching the neutral ground in the center of St. Roch, he continued on across that street. While walking from the neutral ground to the uptown side of St. Roch he was struck by the automobile driven by defendant's minor son.
Plaintiff contends that the last few feet of the pedestrian lane on which he was crossing from the neutral ground to the uptown side of St. Roch was blocked by an automobile parked parallel to the curb of the uptown side of St. Roch, that consequently he turned to his left to walk around this parked car, and that when he was near the front end of it, he was hit by the automobile driven by young Bondio and knocked down.
Ralph Frank Bondio, the operator of the car, was travelling on North Miro Street in the same direction as plaintiff was walking. Upon approaching the intersection of North Miro and St. Roch he made a left turn, at a speed not exceeding 10 miles per hour, to proceed along St. Roch toward the river. According to his testimony, when he completed his left turn and his lights focused on the plaintiff, the latter was then about five feet in front of his car, so close that Bondio could not stop the car in time to avoid the accident. As stated by the Court of Appeal [95 So.2d 698], "Bondio says that he could not discover the presence of Tauzier sooner than he did because his car was turning to his left and the lights therefore did not focus upon Tauzier until the turn had been completed, and also because of the fact that it was raining rather heavily at the time; that the clothing of Tauzier was quite dark in color and, as already stated, because there was no reason for him to anticipate that Tauzier would be crossing some distance from the pedestrian lane." Bondio further states that Tauzier at this time was not in the pedestrian lane but was in the street some distance from the corner.
A reading of the record convinces us that Bondio was not travelling over 10 miles *758 per hour as he made the turn into St. Roch. He testified at the trial that he was proceeding at a speed of from five to eight miles per hour, and the plaintiff himself in describing the accident stated on cross-examination that the automobile "just hit me a bump and knocked me right over". Furthermore, the car stopped immediately, or almost immediately, after striking plaintiff.
Plaintiff contends that when he was hit he was just out of the pedestrian lane going around the front end of the parked car which blocked this lane. On the other hand, young Bondio in a statement given to the police a short time after the accident stated that plaintiff was struck 20 feet from the corner of St. Roch Avenue and North Miro Street, but at the trial he testified that the point where he struck plaintiff was 40 or 45 feet from the corner.[1]
We think the testimony of Mrs. Carl Wonderley, a disinterested witness, fixes with some degree of certainty the place where plaintiff was struck by the car driven by young Bondio. This witness lived in the second house from the corner, which is a double house. Within seconds after the accident occurred, she and her husband rushed to the front of their home and saw Bondio rendering assistance to the plaintiff in the street at a point opposite the nearer side of the corner dwelling, also a double house. Bondio and Mr. Wonderley removed plaintiff to the porch of the house in which the Wonderleys lived, and plaintiff himself states that this porch was approximately 30 or 35 feet from the corner of North Miro. Consequently it can be seen that the accident actually occurred less than 30 feet from the corner, although the exact distance from the corner is not established. We are, however, convinced that at the time plaintiff was hit he was well outside the pedestrian lane, much farther than was necessary for him just to walk around the parked car which he says was blocking the pedestrian lane, and that as the driver of the car completed his turn and his lights focused on plaintiff, the plaintiff was so close that the driver could not stop in time to avoid the accident.
The driver of the car had no reason to anticipate plaintiff's presence in the street between intersections, and under the prevailing conditions of rain and darkness and the facts set out above, we find, as did the Court of Appeal in affirming the judgment of the district court, that the driver of the car was free from fault in not discovering the presence of the plaintiff in time to stop before striking him. See Dodge v. Bituminous Casualty Corporation, 214 La. 1031, 39 So.2d 720; Vowell v. Manufacturers Casualty Ins. Co., 229 La. 798, 86 So.2d 909.
Plaintiff argues alternatively that he should be permitted to recover under the rule of the "last clear chance", or "discovered peril". This rule is without application here because we have found the driver of the car to be free from fault. Assuming, however, that the driver of the car was negligent for the reasons urged by plaintiffan assumption most favorable to plaintiff, we think plaintiff was guilty of contributory negligence in crossing a dark street in the rain between intersections.
In this state it is well recognized by decisions of this court as well as by numerous decisions of the Courts of Appeal that the last clear chance doctrine is available to a defendant as well as to a plaintiff. Barnhill v. Texas & P. Ry. Co., 109 La. 43, 33 So. 63; Sammons v. New Orleans Ry. & Light Co., 143 La. 731, 79 So. 320; Bergeron v. Department of Highways, 221 La. 595, 60 So.2d 4, 8. In Bergeron v. Department of Highways, supra, this court said:
"* * * The rule of `the last clear chance' or `discovered peril' applies to *759 both parties who are involved in an accident. In 38 Am.Jur.Negligence, Sec. 227, that thought is expressed as follows: `As graphically stated by some authorities, the doctrine of discovered peril is a two-edged sword, applicable equally to the rights of a defendant and those of a plaintiff.' * *"
The question then arises in the instant case whether the driver of the car or the plaintiff had the last clear chance to avoid or prevent the accident. Under the facts of this case the danger of being struck was apparent to plaintiff as he was in a far better position to see the headlights of the approaching car than the driver was to see him, and was thus in a better position to observe the situation and apprehend the danger before it became imminent. Plaintiff then had the last clear chance to avoid the accident, and he cannot prevail against the defendant under this doctrine.
The judgment of the Court of Appeal is affirmed.
FOURNET, C. J., dissents being of the opinion that the views expressed by McCALEB, J., are correct.
McCALEB and SIMON, JJ., dissent.
McCALEB, Justice (dissenting).
The accident in this case occurred on a dark and rainy night in the upper roadway of St. Roch Avenue on the river side of the intersection of North Miro Street. Plaintiff, a pedestrian, was attempting to cross this roadway from the neutral ground corner, when he was struck by the right front end of defendant's car, which was being driven by his 19-year-old son who had turned into the roadway from North Miro Street, a one-way thoroughfare running towards uptown, crossing St. Roch Avenue at right angles. St. Roch Avenue is a wide street with double roadways running between the river and the lake and at its upper intersection with North Miro Street there is no street light, which circumstance, together with the inclement weather, rendered driving conditions on the night of the accident hazardous. When young Bondio made a left turn into the St. Roch Avenue roadway from the South Miro Street intersection, he was travelling, according to his testimony, at approximately 10 miles per hour. At that time plaintiff, a cripple, was walking in the roadway at a point variously estimated at between 20 and 40 feet past the usual pedestrian crossing. Bondio says that, due to the unfavorable driving conditions, coupled with the fact that the headlights of his car did not focus upon plaintiff until his turn had been completed, he did not discover plaintiff in the roadway until he was within a few feet from him and at a time when he was unable to take effective means to prevent an accident.
On the foregoing statement of facts, which are substantially the same as those found by the majority and the Court of Appeal, I think it clear that Bondio was guilty of negligence. However, the Court of Appeal [95 So.2d 698] deduced (and the majority approves its finding) that, since the driver could not discover the presence of plaintiff sooner because his car was turning to the left and the lights thereof did not focus on him and because of the fact that it was raining heavily at the time and also because plaintiff's clothing was dark in color, "* * * there was no reason for him to anticipate that Tauzier would be crossing some distance from the pedestrian lane." It is on this basis that the majority conclude that "* * * the driver of the car was free from fault in not discovering the presence of the plaintiff in time to stop before striking him."
I cannot subscribe to this holding. In my opinion, it is fallacious to conclude that Bondio had no reason to anticipate plaintiff's presence in the street for the established jurisprudence is that the duty is always upon the driver of a motor vehicle, particularly while driving on a city street, *760 to anticipate the presence of pedestrians in and upon the roadway. And it is also contrary to a proper conception of the motorist's obligation to the public to declare that, because of the conditions obtaining on the night of the accident and the failure of the headlights of the car to focus on plaintiff until young Bondio had completed his left turn, he is legally excused from fault. The law, as I understand it, is well settled that the initial duty of those operating motor vehicles is to keep a sharp and constant lookout for pedestrians on the highway and failure of the driver to see that which should have been seen is negligence. Rottman v. Beverly, 183 La. 947, 165 So. 153; Jackson v. Cook, 189 La. 860, 181 So. 195; Jones v. American Mutual Liability Insurance Co., La.App., 189 So. 169; Mahne v. Steele, La.App., 32 So.2d 761 and Maher v. New Orleans Linen Supply Co., La.App., 41 So.2d 101.
The fact that young Bondio was driving at a speed of 10 miles per hour affords no sound ground for concluding that he was prudent. Speed must necessarily be commensurate with the conditions obtaining at the time of the accident and, in view of the inclement weather and the darkness faced by Bondio while negotiating the left turn at the unlighted intersection, he should have decelerated his speed to such an extent that he could stop immediately upon encountering a pedestrian in the roadway. And, indeed, he had no right to assume that plaintiff or other pedestrians might not be crossing the roadway at the time he turned into it.[1]
The majority also indicate that plaintiff was guilty of negligence, finding that he was not within the pedestrian lane at the time he was struck. But, conceding that plaintiff was outside of the pedestrian lane at the time of the accident, I find it difficult to perceive how this had any causal connection with the accident. Young Bondio says that the reason why he did not see plaintiff sooner was because his lights did not focus upon him until he had made the turn. Therefore, the farther away from the pedestrian crossing that plaintiff is placed would appear to have given Bondio greater opportunity to have observed him and also a greater distance within which to bring his car to a stop.
Finally, the majority, after holding that plaintiff was negligent in crossing a dark street in the rain between intersections, declare that Bondio did not have a last clear chance to avoid striking him because plaintiff "* * * was in a far better position to see the headlights of the approaching car than the driver was to see him, and was thus in a better position to observe the situation and apprehend the danger before it became imminent."
This observation, it seems to me, is not factually correct since it is obvious that plaintiff, while crossing the roadway of St. Roch Avenue from the neutral ground to the uptown side of the street, necessarily *761 had his back turned to the Bondio car which was admittedly approaching from the rear on North Miro Street. According to Bondio, the lights of his car did not bring plaintiff into focus until he was right on him. If this be so, it is to be wondered how plaintiff could observe the lights of the car, without turning his head to the rear, prior to the time he was struck.
I respectfully dissent.
NOTES
[1] He explains this discrepancy by saying that he revisited the scene of the accident after giving his statement to the police.
[1] The two cases cited by the majority in support of its opinion that Bondio was free from negligence, Dodge v. Bituminous Casualty Corp., 214 La. 1031, 39 So. 2d 720 and Vowell v. Manufacturers Casualty Ins. Co., 229 La. 798, 86 So.2d 909, are totally inapplicable to this case. Those suits involved accidents occurring at night to motorists who collided with trucks which had been negligently parked upon the highway without lights or flares. The issue in those matters was not whether the defendants were primarily at fault as this was conceded; it was whether the respective plaintiffs were guilty of contributory negligence in failing to see the negligently parked vehicles obstructing the highway in time to avert a collision. The Court held that contributory negligence had not been established. Surely these cases, involving collisions with obstructions on an open highway, are hardly comparable with and are without pertinence to an accident like this, occurring in a populated city in which a pedestrian is struck by an automobile, and furnish no reasonable basis for saying that the motorist in this case is entitled to be exonerated from his fault in failing to see the pedestrian and have his car under such control so as to avoid striking him.