HAWTHORNE, Justice.
Plaintiff Paul Tauzier seeks to recover damages for injuries sustained as a result of being struck by an automobile driven by Ralph Frank Bondio, the 19-year-old minor son of the defendant Frank L. Bondio. Plaintiff suffered a compound fracture of the tibia and the fibula of his right leg, and due to infection which subsequently set in, the leg had to be amputated above the knee.
After trial on the merits the district court rejected plaintiff’s demands, and the Court of Appeal for the Parish of Orleans affirmed this judgment. See 95 So.2d 696. We granted plaintiff’s application for a writ, and the case is before us under our supervisory jurisdiction.
The accident involved in this case occurred around 8:00 p. m. on March 4, 1950, near the corner of North Miro Street and St. Roch Avenue in the City of New Orleans. It was a dark, rainy night, and there was no street light at the corner near which the accident happened. In fact, plaintiff himself states that it was “pitch dark, there was no light at the corner at all”.
Plaintiff, who was on his way home, alighted from a bus at the downtown lake side of North Miro Street at the intersection of St. Roch Avenue, crossed North Miro to the river side of that street, and started across St. Roch in the direction of Canal Street. After reaching the neutral ground in the center of St. Roch, he continued on across that street. While walking from the neutral ground to the uptown side of St. Roch he was struck by the automobile driven by defendant’s minor son.
Plaintiff contends that the last few feet of the pedestrian lane on which he was crossing from the neutral ground to the uptown side of St. Roch was blocked by an automobile parked parallel to the curb of the uptown side of St. Roch, that consequently he turned to his left to walk around this parked car, and that when he was near the front end of it, he was hit by the automobile driven by young Bondio and knocked down.
Ralph Frank Bondio, the operator of the car, was travelling on North Miro Street in the same direction as plaintiff was walking. Upon approaching the intersection of North Miro and St. Roch he made a left turn, at a speed not exceeding 10 miles per hour, to proceed along St. Roch toward the river. According to his testimony, when he completed his left turn and his lights focused on the plaintiff, the latter was then about five feet in front of his car, so close that Bondio could not stop the car in time to avoid the accident. As stated by the Court of Appeal [95 So.2d 698], “Bondio says that he could not discover *521 the presence of Tauzier sooner than he did because his car was turning to his left and the lights therefore did not focus upon Tauzier until the turn had been completed, and also because of the fact that it was raining rather heavily at the time; that the clothing of Tauzier was quite dark in color and, as already stated, because there was no reason for him to anticipate that Tauzier would be crossing some distance from the pedestrian lane.” Bondio further states that Tauzier at this time was not in the pedestrian lane but was in the street some distance from the corner.
A reading of the record convinces us that Bondio was not travelling over 10 miles per hour as he made the turn into St. Roch. He testified at the trial that he was proceeding at a speed of from five to eight miles per hour, and the plaintiff himself in describing the accident stated on cross-examination that the automobile “just hit me a bump and knocked me right over”. Furthermore, the car stopped immediately, or almost immediately, after striking plaintiff.
Plaintiff contends that when he was hit he was just out of the pedestrian lane going around the front end of the parked car which blocked this lane. On the other hand, young Bondio in a statement given to the police a short time after the accident stated that plaintiff was struck 20 feet from the corner of St. Roch Avenue and North Miro Street, but at the trial he testified that the point where he struck plaintiff was 40 or 45 feet from the corner.[1]
We think the testimony of Mrs. Carl Wonderley, a disinterested witness, fixes with some degree of certainty the place where plaintiff was struck by the car driven by young Bondio. This witness lived in the second house from the corner, which is a double house. Within seconds after the accident occurred, she and her husband rushed to the front of their home and saw Bondio rendering assistance to the plaintiff in the street at a point opposite the nearer side of the corner dwelling, also a double house. Bondio and Mr. Wonderley removed plaintiff-to the porch of the house in which the Wonderleys lived, and plaintiff himself states that this porch was approximately 30 or 35 feet from the corner of North Miro. Consequently it can be seen that the accident actually occurred less than 30 feet from the corner, although the exact distance from the corner is not established. We are, however, convinced that at the time plaintiff was hit he was well outside the pedestrian lane, much farther than was necessary for him just to walk around the parked car which he says was blocking the pedestrian lane, and that as the driver of the car completed his turn and his lights focused on plaintiff, the plaintiff was so *523 close that the driver could not stop in time to avoid the accident.
The driver of the car had no reason to anticipate plaintiff’s presence in the street between intersections, and under the prevailing conditions of rain and darkness and the facts set out above, we find, as did the Court of Appeal in affirming the judgment of the district court, that the driver of the car was free from fault in not discovering the presence of the plaintiff in time to stop before striking him. See Dodge v. Bituminous Casualty Corporation, 214 La. 1031, 39 So.2d 720; Vowell v. Manufacturers Casualty Ins. Co., 229 La. 798, 86 So.2d 909.
 Plaintiff argues alternatively that he should be permitted to recover under the rule of the “last clear chance”, or “discovered peril”. This rule is without application here because we have found the driver of the car to be free from fault. Assuming, however, that the driver of the car was negligent for the reasons urged by plaintiff — an assumption most favorable to plaintiff — ,we think plaintiff was guilty of contributory negligence in crossing a dark street in the rain between intersections.
In this state it is well recognized by decisions of this court as well as by numerous decisions of the Courts of Appeal that the last clear chance doctrine is available to a defendant as well as to a plaintiff. Barnhill v. Texas & P. Ry. Co., 109 La. 43, 33 So. 63; Sammons v. New Orleans Ry. & Light Co., 143 La. 731, 79 So, 320; Bergeron v. Department of Highways, 221 La. 595, 60 So.2d 4, 8. In Bergeron v. Department of Highways, supra, this court, said :
“ * * * The rule of ‘the last clear chance’ or ‘discovered peril’ applies to both parties who are involved in an accident. In 38 Am.Jur.Negligence, Sec. 227, that thought is expressed as follows: ‘As graphically stated by some authorities, the doctrine of discovered peril is a two-edged sword, applicable equally to the rights of. a defendant and those of a plaintiff.’ * * ”
The question then arises in the instant case whether the driver of the car or the plaintiff had the last clear chance to avoid or prevent the accident. Under the facts of this case the danger of being struck' was apparent to plaintiff as he was in a far better position to see the headlights of the approaching car thari the driver was to see him, and was thus in a better position to observe the situation and apprehend the danger before it became imminent. Plaintiff then had the last clear chance to avoid the accident, and he cannot prevail against the defendant under this doctrine.
The judgment of the Court of App.eal is affirmed.
*525 FOURNET, C. J., dissents being of the opinion that the views expressed by McCALEB, J., are correct.
McCALEB and SIMON, JJ., dissent.

. He explains this discrepancy by saying that he revisited the scene of the accident after- giving bis statement to the police.