214 So.2d 236 (1968)
Benjamin HANFORD
v.
JAN C. UITERWYK COMPANY, Inc., Joseph Jurisich Transfer and Storage, Inc., Cooper Stevedoring of Louisiana, Inc., Continental Casualty Insurance Company and Travelers Insurance Company.
No. 3152.
Court of Appeal of Louisiana, Fourth Circuit.
July 1, 1968.
Rehearing Denied October 7, 1968.
Writ Refused December 20, 1968.
Morgan, Von Hoene & Becker, William L. Von Hoene and Stanley A. Cotlar, New Orleans, for Benjamin Hanford, plaintiff-appellee.
Hammett, Leake & Hammett, Donald Hammett, New Orleans, for Jan C. Uiterwyk Co., Inc., defendant-appellee.
Deutsch, Kerrigan & Stiles, Francis G. Weller, New Orleans, for Joseph Jurisich Transfer and Storage, Inc. and Continental Casualty Ins. Co., defendants-appellees.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Donald L. King, New Orleans, for Cooper Stevedoring of Louisiana, Inc. and Travelers Ins. Co., defendants-appellants.
Terriberry, Rault, Carroll, Yancey & Farrell, G. Edward Merritt, New Orleans, *237 for American Employers Ins. Co., intervenor-appellee.
Before YARRUT, CHASEZ and BARNETTE, JJ.
YARRUT, Judge.
Plaintiff filed this suit against Cooper Stevedoring of Louisiana, Inc. (referred to herein as "Cooper Stevedoring"), Jan C. Uiterwyk Company, Inc. (referred to herein as "Uiterwyk Co."), and Joseph Jurisich Transfer & Storage, Inc. (referred to herein as "Joseph Jurisich, Inc."), and their respective underwriters, to recover for personal injuries sustained during his employment with Delta Steamship Lines, Inc. (referred to herein as "Delta"), while walking on the Galvez Street wharf in New Orleans.
American Employers Insurance Company (referred to herein as "American Employers"), intervened to recover compensation and medicals paid to, or on behalf of, Plaintiff under a Workmen's Compensation Policy issued by it to Delta. At the time of the trial compensation, in the amount of $3,340.00, and medical benefits, in the amount of $2,680.28, had been paid.
The case was tried before a jury, which found (by a vote of nine to three) for Plaintiff only against Cooper Stevedoring and its insurer, Travelers Insurance Company, in the amount of $25,600.00; and released all other Defendants.
The judgment of the Trial Judge, in addition to giving effect to the jury award, also gave judgment in favor of American Employers for the compensation and medical expenses paid and to be paid, which sums were given preference over any amount to be received by Plaintiff.
Cooper Stevedoring and Travelers Insurance Company appealed suspensively from the judgment. Plaintiff took no appeal from the judgment dismissing his action against the other Defendants. Appellees contend the jury's finding of liability was supported by substantial evidence, not manifestly erroneous, and should be affirmed; and that, considering the whole record, the jury did not abuse the "much discretion" given to it by law in fixing the amount of the damages.
On the date of his injury Plaintiff was employed as a receiving clerk by Delta at its Galvez Street wharf in New Orleans. About 10:30 A.M., while performing the duties of his employment, he tripped and fell over a small plastic band which had been discarded by Cooper Stevedoring, an independent contractor, which had performed work on the wharf. As a result of the accident, Plaintiff fractured both arms, sustained a severe contusion of the chest, including ten broken ribs, permanent damage to the junction of the cartilage to the sternum, and he is presently unable to work.
A few days prior to the accident, Uiterwyk Co. had arranged for the on-shipment, through the Port of New Orleans, of a cargo of barrel staves. The cargo arrived in New Orleans at the Congress Street wharf, consisting of broken-down barrel staves, and hoops, bound by small black plastic bands. Uiterwyk Co. contracted with Joseph Jurisich, Inc., a drayage concern, to move the cargo (then loaded on pallet boards) from Congress Street wharf to the Galvez Street wharf, for shipment aboard a Delta vessel.
Upon arrival of the cargo at the Galvez Street wharf, Plaintiff refused to accept the bundles in their condition, and reported to his superior that the cargo would require recoopering and rebinding. After notice by Delta of the condition of the cargo, Uiterwyk Co. contracted with Cooper Stevedoring to recooper or rebundle the cargo. Largely through the indulgence of Delta, Joseph Jurisich, Inc., was permitted to unload the cargo, which was still situated on pallet boards, in designated sections of the wharf, where the recoopering work was to be performed.
*238 Cooper Stevedoring began work on the morning of Friday, February 25, 1966, which it completed at approximately 5:30 P.M., the same day. Cooper Stevedoring employees stated they "policed the area" and picked up all discarded plastic bands and trash after completing the recoopering. Plaintiff tripped and fell at approximately 10:30 A.M. the following Monday. The plastic band on which Plaintiff tripped was located at the edge of a roadway between stacked cargo, inside the wharf, and within ten feet of the area where the recoopering had been performed.
The jury found Cooper Stevedoring was negligent in failing to remove all discarded plastic bands left by the recoopering operation, and that the plastic band was the proximate cause of Plaintiff's injury.
It is uncontroverted that Plaintiff suffered serious injuries on the date and time claimed. His testimony was corroborated by an eye-witness that, on the morning of the accident, and while Plaintiff was returning to Delta's office, located inside the Galvez Street wharf, he fell. Plaintiff testified that before crossing the roadway, he noticed a fork-lift truck coming toward him in the roadway, so he moved over to the side to avoid being hit. After the truck passed, he turned to resume walking toward the Delta office when he suddenly fell, caused by the plastic band, which he described as follows:
"Q. What was the color of this band, Mr. Hanford?
A. It was a black or a brown plastic band.
Q. And the approximate size?
A. In diameterwell, it was about a footit was about that size; about a foot, and it was about a little over a quarter of an inch thick, and less than a sixteenth of an inch wide. (Indicating)
Q. One of the bands that came off the recoopering
A. Yes, sir."
Plaintiff's fall was witnessed by one Michael Logrie, who testified:
"Q. Did you have occasion on February 28th to observe an accident?
A. I did, yes, sir.
Q. Would you tell the gentlemen of the jury what you saw on that particular morning, stating the name of the person involved and what you found?
A. Well, on that morning I know the gentleman is Mr. Bennythat's all. I don't know his last name. I know him as Benny.
Q. Is he sitting here in Court today?
A. Yes, sir, he's the gentleman right there. (Indicating)
Q. All right, sir.
A. He was coming from around the turn towards the roadway, and when he came into the roadway, he fell. He fell brutually. He just fell, and fell on his two elbows, as if he fell off a building. That's how hard he fell, just fell hard."
Defendant attaches much significance to the fact that Michael Logrie, the only eye-witness to Plaintiff's fall, did not recall seeing a plastic band on Plaintiff's foot. However, Mr. Logrie did testify there were plastic bands in the vicinity where Plaintiff fell. In this he was corroborated by Mr. Pascal Tarrentino (referred to as "Parentino" in the transcript), who testified that, on the day of the accident, he noticed several of the bands lying on the wharf in the vicinity of the Delta office.
Robert D'Aunoy (referred to as "Dunwah" in the transcript) testified that Joseph Jurisich, Inc., had delivered the cargo of barrel staves on pallet boards and placed the cargo in sections designated by Delta where the recoopering was to be performed; that Cooper Stevedoring recoopered the cargo in the same areas in which it had been placed; and that during the reworking *239 there were hoops and bands scattered in and around the sections containing the cargo. Mr. D'Aunoy further testified that it was the obligation of Cooper Stevedoring to clean up all trash, including the discarded plastic bands, upon completion of the work.
Ira V. Michell, Jr., an employee and supervisor of Cooper Stevedoring work crew, who worked at the Galvez Street wharf on the day in question, testified that, upon completion of the work, his employees policed the area and picked up all discarded plastic bands; and that the discarded debris or bands were placed on one or two pallet boards, which was the normal practice upon completion of such a job. Mr. D'Aunoy did, however, testify that, after Cooper Stevedoring left on the day in question, there were several discarded plastic bands remaining in the work area.
We must agree with Plaintiff's contention, amply supported by evidence, that Cooper Stevedoring assumed complete care, custody and control of the cargo, and supervised the entire recoopering operation. Hence, it was Cooper Stevedoring's duty to remove all debris, including the discarded plastic bands, from the areas in which they were working; so that the proximate cause of Plaintiff's injuries was this negligent failure or omission by them.
It is true that one is contributorily negligent for failing to observe what he could, and should have observed. However, the facts surrounding the accident in this case afford compelling reasons to conclude that the plastic band involved was not obvious and apparent.
As stated above, Plaintiff testified that, prior to his accident on that morning, he had not noticed any of the small plastic bands in the roadway, which he testified were about a foot in diameter, a little over a quarter of an inch thick, and less than a sixteenth of an inch wide; were black or brown in color; were discarded upon a black asphalt floor at the edge of a roadway between stacks of cargo; immediately before he fell, he moved to the edge of the roadway to avoid a passing truck; and when he turned to resume walking, he tripped and fell over one of the discarded plastic bands.
In Richard v. General Fire and Casualty Company, La.App., 155 So.2d 676, a woman was held not to be guilty of contributory negligence when she slipped and fell on the wet porch of a bath house as she was leaving the swimming pool.
The Court held:
"Contributory negligence is conduct which under the circumstances involves an undue risk of harm to the plaintiff, conduct `which falls below the standard to which he is required to conform for his own protection,' * * *. Contributory negligence barring recovery is an affirmative defense which the pleader thereof must prove by a preponderance of the evidence * * *."
Applying this principle, we must agree Plaintiff's conduct did not fall below the standard required of him for his own protection. Plaintiff for his own safety had to step aside for the on-coming truck to avoid being hit.
In Provost v. Great Atlantic & Pacific Tea Company, La.App., 154 So.2d 597, a patron of defendant's supermarket tripped and fell over boxes located at the end of a counter. The Court, in holding plaintiff was not contributorily negligent, stated that the boxes could not be readily seen as plaintiff negotiated the turn to another aisle. See Gilliam v. Lumbermens Mutual Casualty Company, 240 La. 697, 124 So.2d 913; Veal v. Employers Liability Assurance Corporation, La.App. 5, 108 So.2d 242.
In McMurray v. Aetna Casualty & Surety Company, La.App., 141 So.2d 898, suit was filed by Mrs. McMurray and her husband for injuries sustained in a fall on her employer's premises, a dress shop. In that *240 case, Mrs. McMurray caught her heel in the carpet that had been cut away in a circular area to permit the free opening and closing of a door leading to a small room located at the rear of the store. Similar to the instant case, both Mrs. McMurray and her employer were aware of the dangerous condition of the carpet. Mrs. McMurray fell in turning from the layaway rack, in the back room toward the door, for the purpose of determining if there were any customers in the front part of the store. With respect to contributory negligence, the Court held:
"The asserted defense of assumption of risk or, alternatively, contributory negligence on the part of Mrs. McMurray, is untenable under the facts which we have attempted to set forth in detail. While it is true that Mrs. McMurray was constantly aware of the dangerous condition of the carpet which eventually caused her injury, it is well established that such knowledge will not defeat an action for damages. A recent pronouncement on this point is found in Gilliam v. Lumbermen's Mutual Casualty Company, 240 La. 697, 124 So.2d 913, 915."
Therefore, we must conclude that Plaintiff was in no way guilty of contributory negligence and that, under the circumstances, he acted as an ordinary prudent person would.
We find no merit in Defendants' contention that the District Judge committed prejudicial error in failing to properly instruct the jury. A reading of the instructions given to the jury by the District Judge clearly reflects that all special charges complained of were, in effect, included in the Judge's general charge. Guerra v. W. J. Young Construction Company, La.App., 165 So.2d 882.
Defendants further urge that the charge to the jury was defective, in that reference was made to Travelers Insurance Company over their objection.
It is true that Plaintiff did not call for production of the policy of insurance, and that the policy was not introduced into evidence. Travelers Insurance Company was named as a Defendant in the suit, which alleged that it issued a certain policy of insurance, which was in full force and effect, insuring Cooper Stevedoring against such claims as the one herein asserted. Travelers Insurance Company answered as follows:
"The allegations of paragraph XVIII of the Petition are denied, and defendants aver that any policy of insurance that may have been in existence is the best evidence of its own terms, coverages, conditions, and limitations."
As between Plaintiff and Travelers, the latter was the only one in possession of the policy or a counterpart, and Travelers should have produced a counterpart if it intended to prove it had no liability under its terms.
Therefore, the District Judge had no alternative but to include Travelers Insurance Company as a Defendant in his charge to the jury.
Defendants further contend that the award of the jury was grossly excessive, and constituted a manifest abuse of discretion. There is evidence Plaintiff sustained a permanent disability of fifteen percent of the left elbow; sustained two broken arms, a crushing type injury to the chest resulting in ten broken ribs, and serious injury to the sternum. Dr. Blandino, the treating physician, described Plaintiff's injuries as follows:
"Q. And when you first saw Mr. Hanford, will you describe to the jury and the Court, his condition?
A. Well, he was in a considerable amount of pain. He had had both arms both arms were broken; both elbows. He had hadreceived a severe contusion of the chest, which later proved that he had ten ribs broken. And he was also *241 having some pain in the leg. And he was havinghe was in pretty miserable condition when I saw him. At the time we had to keep him under sedation for all the time I was there."
Plaintiff was immediately hospitalized on February 28, 1966, for a period of approximately twelve days. He underwent surgery of his left elbow, at which time the radius was removed. He was subsequently readmitted to the hospital three times for treatment. Dr. Blandino testified Plaintiff is still having difficulty in the area of the junction of the ribs and the sternum; that Plaintiff has required treatment on fifteen occasions to relieve pain in that area, which he described as follows:
"Q. In what manner are you treating him or how are you treating him?
A. We are giving him a number of diapulsephysiotherapy heat treatments over these areas, and we can also relieve the pain for several days, sometimes for two or three weeks by injection. We are injecting a solution of zylocane (spelled phonetically) and cortesone into this area of pain. It relieves the pain immediately, and he has relief for several days, sometimes three or four weeks, and then the pain returns. We have to reinject him.
Q. Well, how often since the accident have you injected cortesone to relieve pain?
A. I haven't counted it, but it must be ten or fifteen times. I'll have to count them. I don't know exactly."
Dr. Blandino further testified Plaintiff could not return to work; and that he would require additional medical treatment in the future.
Regarding financial loss to Plaintiff; medical expenses incurred to date total $5,640.89. Plaintiff earned an hourly wage which totalled from $600.00 to $700.00 per month. His loss of earnings, up to date of trial, was $13,800.00. Assuming he only earned $600.00 per month, this special damage alone exceeded $19,400.00. With respect to future damage, Dr. Soboloff, who testified on behalf of Defendants, admitted Plaintiff had a fifteen percent functional disability of his left elbow.
While the testimony of specialists is normally accorded greater weight than a general practitioner, both specialists for Defendants (Drs. Nadler and Soboloff) testified that they saw Plaintiff only one time for the purpose of evaluating his condition at the request of counsel for Defendants. Dr. Soboloff examined Plaintiff in mid-June, 1967, approximately one and a half years after the accident, but never treated him, and was requested only to evaluate the disability, if any, of an orthopedic nature.
Dr. Nadler testified he examined Plaintiff in December, 1966, almost one year after the accident; that he never treated Plaintiff, but only performed certain tests to determine what his heart status was.
On the other hand, Dr. Blandino was Plaintiff's attending and treating physician from the date of the accident. His testimony is entitled to more weight than the other physicians who made their examinations in preparation for their appearance to testify as medical experts. Morris v. Supreme Bedding & Furniture Manufacturing Co., La.App., 126 So.2d 412; Richmond v. New Amsterdam Casualty Company, La.App., 85 So.2d 717; Roy v. Guillot, La. App., 84 So.2d 469; Walker v. Monroe, La.App., 62 So.2d 676.
In view of the testimony of the treating physician, Dr. Blandino, as well as that of Dr. Soboloff, the award of the jury, in the amount of $25,600.00, together with legal interest thereon from date of judicial demand until paid, is fair and reasonable; particularly regarding the special damages incurred; the pain and suffering; and the admitted fifteen percent permanent disability of the elbow. The verdict of the jury and the judgment of the District Judge, *242 the latter including the amount prayed for by American Employers Insurance Company, Intervenor, are affirmed; Defendants to pay all costs in both Courts.
Affirmed.