219 So.2d 532 (1969)
Robert G. AUCOIN, Plaintiff-Appellee,
v.
FIDELITY GENERAL INSURANCE COMPANY, Defendant-Appellant,
Hartford Accident and Indemnity Company, Intervenor-Appellee.
No. 2594.
Court of Appeal of Louisiana, Third Circuit.
February 14, 1969.
Rehearing Denied March 12, 1969.
Writ Refused May 5, 1969.
*533 Hall, Raggio, Farrar & Barnett, by Louis D. Bufkin, Lake Charles, for defendant-appellant.
Francis E. Mire, Lake Charles, for plaintiff-appellee.
Before TATE, FRUGÉ and MILLER, Judges.
MILLER, Judge.
City Patrolman, Robert G. Aucoin, seeks damages for personal injuries resulting *534 from an intersectional collision which occurred when his motorcycle struck Mrs. Melvin Elliott's 1961 Chrysler automobile.
At the time of the accident Mr. Aucoin was acting within the course and scope of his employment as a policeman for the City of Lake Charles. Hartford Accident & Indemnity Company had issued two policies of insurance to the City of Lake Charles, one providing workmen's compensation coverage and the other providing physical damage coverage. In accordance with the coverage provided Hartford paid weekly compensation benefits to Aucoin and paid his medical expenses. Further, Hartford paid for the damage done to the motorcycle being ridden by Aucoin and owned by the City of Lake Charles.
Mr. Aucoin sued Fidelity General Insurance Company alleging that his injuries were caused by the negligence of Mrs. Elliott and that Fidelity General Insurance Company was the automobile liability insurer of Mr. and Mrs. Elliott. Hartford intervened in Mr. Aucoin's suit and prayed that it be reimbursed for the amounts which it paid as medical expenses and weekly benefits under the workmen's compensation coverage. Further, Hartford filed a separate suit against Fidelity General and Mr. Elliott seeking to be reimbursed for the amount which it paid under its physical damage coverage for damage done to the motorcycle. These cases were consolidated both for trial and appeal.
Fidelity General answered all stated causes of action denying that it afforded coverage to Mr. and Mrs. Elliott. Further, Fidelity General, answering on its own behalf and on behalf of Mr. Elliott, asserted that Mrs. Elliott was not guilty of negligence which was a proximate cause of the accident and alternatively that Mr. Aucoin was guilty of contributory negligence.
In the suit instituted by Mr. Aucoin judgment was rendered against the defendant ordering Fidelity General to pay Mr. Aucoin $3,750.00 and to pay Hartford $1,184.60. In this judgment it was recognized that the amount of the judgment in favor of Mr. Aucoin was reduced by $630.00, the amount paid by Hartford to Mr. Aucoin in weekly workmen's compensation benefits. Mr. Aucoin did not ask for medical expenses in his suit. Hartford did, however, state a cause of action for both weekly benefits and medical expenses.
In the suit filed by Hartford judgment was rendered against Fidelity General and Mr. Elliott, in solido, ordering that they pay Hartford $979.61.
Fidelity General and Melvin Elliott have appealed. Fidelity General, on its own behalf and on behalf of Mr. Elliott, is contending that Mrs. Elliott was guilty of negligence which was a proximate cause of the accident, and if she was in concluding that Mr. Aucoin was not guilty of contributory negligence. Secondly, Fidelity General contends that the trial court committed error in concluding that it affords insurance coverage to Mr. and Mrs. Elliott. Mr. Aucoin answered the appeal seeking an increase in damages awarded to him.
The accident occurred at about 10:30 A. M. on May 15, 1967 in Lake Charles, Louisiana at the intersection of Kirkman and 9th Streets while the weather was clear and the streets dry. Kirkman is a two-lane street, running north and south, and 9th Street runs east and west. At the Kirkman Street intersection there are stop signs on 9th Street requiring traffic approaching from both east and west to stop before crossing or entering Kirkman Street.
Mrs. Elliott was traveling west on 9th Street and stopped at the intersection. She waited for a north bound vehicle to pass and seeing no other traffic proceeded into the intersection. As the front of her car reached the center of the intersection she saw the motorcycle approaching from the north and jammed on her brakes. The *535 front end of her car dipped and came to a stop at the instant that the front wheel of the motorcycle struck the right fender of her car at the front right wheel. Patrolman Aucoin was thrown over the hood of the car and came to rest on the south side of the Chrysler. His motorcycle came to rest on the north side of the Chrysler.
Officer Aucoin had entered Kirkman Street at the intersection of Kirkman and 7th Streets and was proceeding south to check an abandoned vehicle. He was operating the motorcycle at a speed estimated between 25 to 35 miles per hour and saw Mrs. Elliott's vehicle stopped at the intersection when he was approximately 50 feet from the intersection. He then checked for traffic from other directions and next saw Mrs. Elliott when her vehicle was immediately in front of him at the time of impact.
The impact occurred in the patrolmen's traffic lane approximately four feet west of the center line of Kirkman Street. Photographs in evidence show that both the Chrysler and the motorcycle remained in those positions after the impact.
While there is some evidence in the record to indicate that the officer was operating his motorcycle in an unusual manner in that it was allegedly weaving from side to side and the officer appeared to be slumping or sleeping, the trial judge totally disregarded this witness's testimony. After careful study of the testimony we find no manifest error in this conclusion.
It is well settled that when a motorist stops in obedience to a traffic sign, he has only performed half of the duty imposed upon him by law, and he is further required to make a careful evaluation of traffic conditions in the intersection and to refrain from driving therein in the face of obvious or possible danger. Liverpool & London & Globe Ins. Co. v. Taylor, La. App., 4th Cir., 193 So.2d 840; Hebert v. Travelers Insurance Co., La.App., 3rd Cir., 179 So.2d 513.
The motorist on a right-of-way street with knowledge of the location of the stop sign, has a right to assume that any driver stopped at the intersection on the less favored street will observe the law, and can indulge in this assumption until he sees or should see, that the other car has not observed, or is not going to observe the law. Guidry v. Grain Dealers Mutual Insurance Co., La.App., 3rd Cir., 193 So.2d 873. Kegley v. Grain Dealers Mutual Insurance Co., La.App., 3rd Cir., 207 So.2d 824; McCoy v. State Farm Mutual Insurance Co., La.App., 3rd Cir., 129 So.2d 66; Central Louisiana Electric Company v. Hodges, La.App., 3rd Cir., 137 So.2d 132; Benoit v. Vincent, La.App., 3rd Cir., 132 So.2d 75.
We agree with the trial court's finding that the sole proximate cause of this accident was the negligence of Mrs. Elliott in entering the intersection at a time when the traffic on the favored street had the right of way.
Additionally, appellant urges the doctrine of last clear chance, suggesting that the patrolman should have seen Mrs. Elliott in time to drive to the right and thus avoid striking the Elliott Chrysler. He cites the cases of Tauzier v. Bondio, 237 La. 516, 111 So.2d 756, and Rector v. Allied Van Line, La.App., 2nd Cir., 198 So. 516.
The record amply supports a finding that Officer Aucoin saw the Fontenot vehicle stopped at the intersection when he was 50 to 60 feet from the intersection. His speed was about 30 miles per hour and he then shifted his vision to check for other traffic. Under these circumstances we do not think he was unreasonable in failing to keep his eyes on the Elliott vehicle to see that it would not suddenly enter the intersection in front of him.
Appellant's most serious complaint of error in this case concerns the issues of insurance coverage. Appellant Fidelity cites the fact that the liability policy specifically described a 1961 Ford Falcon as the insured vehicle and points to the fact that this 1961 *536 Ford Falcon was still owned by Mr. and Mrs. Elliott on the date of the accident. It is a fact that Mr. and Mrs. Elliott did not notify the Insurance Company that the 1961 Chrysler had replaced the 1961 Ford Falcon until after the accident had occurred.
The policy of insurance at issue in this case was issued to Melvin R. Elliott and Mary Byrne Elliott on May 18, 1967, three days after the accident, but was effective May 10, 1967, five days before the accident. Mrs. Elliott testified by deposition that she notified her insurance agent on May 15, 1967, the day of the accident, that the 1961 Chrysler had replaced the 1961 Ford Falcon and that the agent told her not to worry about coverage.
On May 22, 1967, Mrs. Elliott filed Louisiana Form SR-21 (the financial responsibility form) and indicated that her 1961 Chrysler was covered by Fidelity General Insurance Company policy, number CA 260167. Appellants have attempted to cast doubt as to whether the form was signed by the "Mary Byrne Elliott" who was involved in the accident in question. However, the policy number shown on the form corresponds to the policy number on the Fidelity General policy attached to appellant's Motion for Summary Judgment, and the typed portion of the form shows the names and address of Mr. and Mrs. Elliott. All of these circumstances prove that the form was actually signed by Mary Byrne Elliott.
Fidelity confirmed that it insured the 1961 Chrysler by signing the detached portion of this form, and allowing this to be furnished to the Louisiana Department of Public Safety. Appellants have questioned the authenticity of the signature of the person who purportedly signed on behalf of Fidelity General and have questioned whether he was employed by Fidelity General. The signature on the certified copy of the Fidelity General policy attached to their Motion for Summary Judgment is the same as the signature on the insurance companies' portion of the financial responsibility form. We find this sufficient to establish that Fidelity knowingly indicated coverage of the 1961 Chrysler.
The trial judge correctly held that as written the Fidelity General policy does not provide coverage for the 1961 Chrysler owned by the Elliotts. However, plaintiffs in these two consolidated cases both sued for reformation of the Fidelity General policy. Three days before the policy was issued, Mrs. Elliott informed her insurance agent that the new policy should cover the 1961 Chrysler, and the agent told her not to worry about coverage. Then, after the policy was issued, Fidelity General Insurance Company confirmed coverage under this policy of a 1961 Chrysler to the Louisiana Department of Public Safety pursuant to the provisions of R.S. 32:898. With these facts, the trial judge, in effect, held that it was the intention of the Elliotts and Fidelity General Insurance Company to insure the 1961 Chrysler and, therefore, the policy should be reformed in accordance with the intention of these parties. See Urania Lumber Co. v. Insurance Company of North America, La.App., 3 Cir., 177 So.2d 640, where we held that:
"* * * An insurer is bound by its agent's knowledge of the true intention of the policyholder as to the coverage intended by the latter to be secured through the issuance of the insurance policy, and the policy will be equitably reformed to afford the intended coverage where the policy as issued does not contain it."
It must be noted that from the date that the '61 Chrysler was purchased early in November of 1967 until the trial, the 1961 Ford Falcon was inoperable and for most of the time was sitting on blocks at the home of Mr. and Mrs. Elliott. The record supports the finding that the '61 Chrysler did replace the `61 Ford.
It was stipulated that "Hartford" as intervenor was entitled to recover $630.00 paid by it to Mr. Aucoin as weekly workmen's compensation benefits. We also affirm *537 the trial court's award to Hartford as against Fidelity of the sum of $1,184.60 to cover medical bills paid for treatment of Mr. Aucoin.
The trial court awarded $3,750.00 damages to Mr. Aucoin, (less the $630.00 in favor of Hartford) for the pain, suffering and general damages sustained by him in the accident. Appellant does not discuss the issue of damages and appellee answered the appeal seeking an increase in the award to the policy limits of $5,000.00.
The medical testimony established that plaintiff suffered a comminuted fracture of the radius of the left wrist and a dislocation of the ulna. Plaintiff was hospitalized for a three-day period. On the day of the accident the doctors reduced the fracture under anesthetic and applied a longarm cast. On May 30th plaintiff was readmitted to the hospital for surgery to insert a pin in his wrist. Again a longarm cast was applied and plaintiff was released from the hospital on June 3rd. The cast was removed on July 20th, 1967 and plaintiff received whirlpool treatments in the doctor's office.
Plaintiff was released to return to work on August 30th with the suggestion that he not undertake hard work. Plaintiff never returned to duty operating a motorcycle. The doctor estimated that plaintiff had a ten per cent permanent disability of the wrist.
We do not find manifest error in the award of $3,750.00 for the injury, pain and suffering and permanent disability suffered by plaintiff.
For these reasons the judgment of the trial court is affirmed and all costs are assessed against defendant-appellant.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.