BOUTALL, Judge.
Sara Gendusa Morales instituted this suit on behalf of herself and her two minor children, seeking damages for the wrongful death of her husband, Joseph Morales, who was killed as the result of being struck by a taxi cab operated by Coy D. Blackwell and owned by Toye Brothers Yellow Cab Company, both named defendants in the instant case.
A jury found for defendants and plaintiffs perfected this appeal.
The undisputed facts are that the accident occurred on November 6, 1967, at approximately 10:40 p. m., in the 3400 block of the Airline Highway in Jefferson Parish, Louisiana. The decedent, Joseph Morales was struck by a taxi cab operated by Coy Blackwell. Morales was killed instantly.
Dr. Monroe Samuels, who assisted in the autopsy, testified at the trial that the alcoholic level in Morales’ bloodstream was 0.-23%, sufficient to impair his judgment.
Prior to the accident, Blackwell was operating the taxi in the left or neutral ground lane of the southbound roadway. Decedent was crossing the highway from west to east, in an area where there was no intersection nor a pedestrian crossing.
In the vicinity of the accident, the Airline Highway has two roadways, one southbound (toward New Orleans) and one northbound. Each roadway is 31.5 feet wide, and has three marked traffic lanes; the roadways are separated by a neutral ground 5.7 feet wide, making a total width of 68.7 feet.
The report of the investigating police officer, who arrived on the scene shortly after the accident, indicates that the situs of the accident was poorly lit. The only street light was on the northbound side of the highway. From further examination *54 of the trial record, the officer’s testimony is that “this street light was so weak that even standing directly under it I had to use my flashlight to prepare my report”. The only other lighting was from some lights illuminating signs on the bar from which decedent apparently came, and a night light at a commercial establishment some 240 feet from the location of the accident. Added to these lighting conditions, at the time of the fatality, are the headlights of the taxi cab and another vehicle in the center lane, traveling in the same southbound direction. The report further indicates that there were clear weather conditions on the night of the accident and the decedent was wearing dark clothing.
There are, of course, a number of disputed facts which arose from conflicting testimony of the various witnesses. There are conflicts as to the range and field of vision of the defendant driver, as to the visibility of the pedestrian because of the lighting conditions and type of clothing worn by him, and as to the activity of the pedestrian and degree of care exercised by the defendant to avoid him. These conflicts required the jury to consider the credibility of the witnesses in resolving them. Obviously they were resolved by the jury in favor of the defendant, and the verdict should not be set aside unless there is manifest error.
The counsel for plaintiff urges that there are several errors of such gravity as to require setting aside the verdict. His first specification of error is that the trial judge erred in charging the jury on the doctrine of sudden emergency, arguing that on the facts of the case the doctrine should not apply. This premise is not acceptable. The court’s duty in framing the charge is to explain the law applicable to the case as a whole and applicable to all the contingent factual conclusions before the jury. It is the jury’s duty in fact finding to assess the applicability of a charge to the merits of the case.
Here there was some evidence that decedent had already reached the highway median and stepped back into defendant’s path. If the jury believed this evidence, it might properly have applied the sudden emergency doctrine. Additionally, there was some evidence indicating that decedent may have stepped from a hidden position in front of a preceding vehicle into defendant’s lane of travel. Such evidence would bolster the necessity of the charge. Under such circumstances, we feel that the trial judge properly exercised his function by instructing the jury of the legal consequences of a finding that the defendant was confronted with a sudden emergency.
The plaintiff also contends that the trial judge erred in his refusal to give certain special charges on the doctrine of last clear chance. Plaintiff submitted to the court four special charges involving the doctrine of last clear chance and discovered peril. These are not numbered but appear in the record as Tr. 115, 116, 117, and 118. In particular, at the trial, plaintiff objected to refusal to give the entire charge contained in document Tr. 116, complete with quotations from two cases.
An examination of the trial judge’s charge, as it appears in the record, convinces us that he gave a proper and complete statement of the law consistent with the evidence presented in the case. In fact his charge largely paraphrases the two requested charges in Tr. 115 and 116, omitting only the quotations from two prior cases. His charge, in part, reads :
“The plaintiffs contend that the doctrine of last clear chance applies to the facts in this case. This is for you to determine. In order for the doctrine of last clear chance to apply, the plaintiff must have proven three essential facts. First, that Joseph Morales was in a position of danger of which he was unaware, or from which he could not extricate himself; secondly, that the defendant actually discovered or should have discovered his danger; and third, that after the defendant actually discovered or should have discovered Joseph H. Morales’ peril, the defendant, Coy Blackwell, *55 had a reasonable opportunity to avoid the accident, yet failed to do so. In other words, if you find from the evidence that Joseph Morales was in a position of danger of which he was unaware of even though his own negligence placed him in danger, and that the defendant, Coy D. Blackwell, could have avoided this accident by the timely observence of Mr. Morales in his path or with the obvious intention of proceeding into his path, and yet failed to do so, then the defendant may be held responsible for the injuries and resulting death, despite the gross and continuing negligence, caused by intoxication or otherwise, on the part of Joseph H. Morales.”
This is a sufficient statement of the point of law involved. Franicevich v. Lirette, 241 La. 466, 129 So.2d 740 (1961); Tauzier v. Bondio, 237 La. 516, 111 So.2d 756 (1959); Soileau v. New Hampshire Ins. Co., 160 So.2d 793 (La.App. 3rd Cir., 1964); Campisi v. Fidelity and Casualty Co. of New York, 152 So.2d 88 (La.App. 3rd Cir., 1963).
The special charges which were refused were, in effect, included in the judge’s general charge, and there is no error apparent. Hanford v. Jan C. Uiterwyk Company, 214 So.2d 236 (La.App. 4th Cir., 1968) ; Guerra v. W. J. Young Construction Company, 165 So.2d 882 (La.App. 4th Cir., 1964).
The plaintiff further urges that the verdict of the jury did not conform to the evidence. The plaintiff argues that the evidence shows that the defendant had the last clear chance to avoid the decedent.
The operative factor in the instant case is whether decedent’s peril was sufficiently apparent to the motorist at a time when the motorist had a clear chance to avoid the accident. The plaintiff argues that the first duty on an operator of a motor vehicle is to keep a sharp lookout ahead to discover the presence of those who might be in danger, citing the following line of cases: Belshe v. Gant, 235 La. 17, 102 So.2d 477 (1958); Jackson v. Cook, 189 La. 860, 181 So. 195 (1938); Rottman v. Beverly, 183 La. 947, 165 So. 153 (1935).
While we do not disagree with the above cited cases, they are distinguishable from the instant case. For the defendant to be liable his negligence must be established.
The evidence is undisputed that the defendant Blackwell was operating his vehicle prudently, well within the speed limit, prior to the accident. There is not the slightest hint that, prior to the accident, his conduct violated any statute, ordinance or rule of motor vehicle operation.
The only possible ground of negligence is that the defendant failed to observe plaintiff in the roadway prior to the time he began to enter Blackwell’s lane. Blackwell testified that there was another vehicle ahead of the taxicab in the center lane, which vehicle obstructed his view of the decedent until moments before Morales entered the taxi’s lane, at which time he diligently attempted to avoid colliding with Morales, but was unsuccessful. The deposition of Jack Enocks, Jr., plaintiff’s witness, corroborates defendant’s testimony:
“Q: What — ah—position was the Mustang in — in relationship to the cab as they were approaching Mr. Morales ?
Enocks: Well, the Mustang was in front of the cab.
Q: And approximately how far in front ?
Enocks: Ah — two car lengths.”
The taxi passenger, James Kennedy, also corroborated defendant’s testimony that he did not recall seeing decedent until he was entering the left lane, and that he (decedent) stopped in the middle of Blackwell’s lane where he was struck. Kennedy further supports the statement of the defendant that a vehicle in the center lane slightly behind the cab prevented Blackwell’s swerving. While Kennedy cannot recall “any other vehicles around”, he *56 refused to negate the possibility that there was an automobile in the center lane preceding the cab.
The plaintiff’s expert witness, John Ex-nicios, traffic engineer, testified that at 30 miles per hour the cab was moving 44 feet per second; and, at that speed, that from the time the driver realized the danger requiring a stop, it would require 79 feet to stop a vehicle, which included 33 feet traveled while the driver moved his foot from the accelerator to the brake and 46 feet for the vehicle to skid to a stop. Exnicios further testified that if the taxicab’s headlights conformed to the statutory requirements, Blackwell would only have a safety margin of 71 feet while traveling for 1.6 seconds, during which he had not only to observe Morales, but to appreciate his danger.
The court in Franicevich, supra, in citing Jones v. American Mutual Liability Ins. Co., 189 So. 169 (La.App.Orl., 1939) states the following rule, which we must consider here:
* * * [I]f there was nothing about the plaintiff’s position or physical condition to indicate that he was in danger, it is immaterial whether defendant saw him or not. The paramount inquiry must therefore always be — whether defendant, if he had been maintaining a proper lookout and had seen the plaintiff, would have observed that the latter was in a position of peril’; to which statement we add: in time to act in a way to prevent the accident.” (Emphasis in the original.) 129 So.2d 740 at 742-43.
The jury in this case heard the evidence, was charged as to the law and found that the defendant was not negligent. This court in Reeder v. Allstate Insurance Company, 235 So.2d 111, 112 (La.App. 4th Cir., 1970) has made the following observation relevant to the appropriate relationship between an appellate forum and a trial jury:
“Respect for jury proximity to questions of credibility and competing inferences supported by widely varied and inconsistent evidence is inherent in the policy and value judgments which structure the trial and appellate process.”
In the instant case both parties tender plausible evidence and each can present argument well founded in the relevant parties’ view of the facts and the inferences to be drawn.
“A fair respect for the policy and relationships which we have discussed requires that in the face of conflicting evidence we respect the jury’s determination of liability absent an error of law or manifest error of fact.” 235 So.2d at 112.
From our review of the record there is no adequate basis to reverse the jury’s findings on liability.
As to the admissibility of the photograph marked Exhibit Toye 3, plaintiff contends that the trial court erred in overruling her objection as to the admissibility of the police photograph taken at the scene following the accident; complaining that the photograph misled the jury since the photograph certainly did not represent the lighting and distance visibility of an approaching motorist since it did not take into consideration the head lights of defendant’s vehicle or the Mustang which certainly illuminated the highway as required by LSA-R.S. 32:321.
In Bonner v. General Accident Fire and Life Assurance Corporation, Ltd., 136 So.2d 412, 418 (La.App. 1st Cir., 1961), the court held:
“The jurisprudence of this state recognizes the wisdom of the old Chinese proverb that ‘one picture is worth ten thousand words’ and establishes the principle that pictures are admissible in evidence when they tend to clarify some material issue or assist the court in weighing the oral testimony of record.”
The Third Circuit Court of Appeal in Launey v. Traders And General Insurance *57 Company, 169 So.2d 757 (La.App. 3rd Cir., 1964), was of the opinion that if the photograph is not substantially correct but is nevertheless admissible because sufficiently correct to be helpful, its verification may consist of explaining the inaccuracies.
The testimony of the police officer who made the photographs immediately after the accident leaves no doubt as to what they intend to portray. The purpose was to show the highway and surrounding area in the vicinity of the accident. He quite clearly testified that the pictures did not even attempt to portray the actual lighting conditions.
Although a photograph of the locus in quo does not reflect conditions identical in every detail with those existing at the time in question, it may nevertheless be admitted into evidence for an expressly limited purpose if, as to such purpose, it is a helpful and accurate illustration, and further if, in the discretion of the trial court, its admission will not be misleading or prejudicial as to those conditions which it does not portray accurately. If a photograph tells the truth about the situation and surroundings so far as it purports to show these things, it ought not to be excluded simply because it does not show some of the surroundings, the showing of which has, by the time the photograph is taken, become impossible. 29 Am.Jur.2d, Evidence § 789.
Counsel for plaintiff raised objection to the reading of Jack Enocks’ deposition in its entirety to the jury. The plaintiff’s position is that the deposition, taken by use of a combination of tape recorder and shorthand, recorded every breath, or hesitation, or utterance, of both counsel, as well as that of the witness, and resulted in being written as an “ah” thus confusing the testimony, misleading the jurors, and, to say the least, making a boring presentation. This objection was raised prior to and at the trial on the grounds that a reading of this deposition “as is” under the circumstances which it was read to the jury was difficult for counsel, more difficult for the jurors, noticeably not comprehended by them; thus overlooked in their deliberations. While the trial judge does not set forth written reasons for overruling the objection, it appears to us that the trial court afforded plaintiff every fair procedural consideration. The allegation by plaintiff that the jury did not comprehend or overlooked Jack Enocks’ testimony in their deliberations places plaintiff in the position of reading each juror’s mind.
These objections, we feel, were properly met in the trial court and are afforded no further consideration. It is rather unusual to entertain a complaint that the deposition record is too accurate.
Lastly, the plaintiff complains of the denial of her motion for a new trial on the grounds that “the trial judge himself felt there was an error in the verdict of the jury”, but denied the motion.
This we feel is taking the judgment on the motion for a new trial out of context. Plaintiff’s motion for a new trial was taken under advisement for approximately 30 days after oral argument was heard on February 25, 1970. On March 23, 1970, the request for a new trial was denied for these reasons:
“In the Court’s opinion a full and complete record has been made up. A new trial would only result in the very same testimony and evidence being submitted to another jury, and the case then appealed by the losing party.
If any errors have been made and perhaps they have been they should properly be corrected by the Fourth Circuit Court of Appeals.”
The lower court does not explicitly disagree with the jury’s verdict as is implied by plaintiff but simply makes an observation to the effect that if any errors were made, their correction could best be handled within the appellate powers of this court rather than within the province of *58 another jury. In the exercise of our appellate powers we find no error.
For the reasons assigned the judgment of the district court is affirmed.
Affirmed.