345 So.2d 141 (1977)
Carl L. MITCHELL
v.
Lannie SIGREST et al.
No. 11194.
Court of Appeal of Louisiana, First Circuit.
March 21, 1977.
Rehearing Denied May 9, 1977.
*142 Michael J. Paduda, Jr., and John N. Gallaspy, Gallaspy & Paduda, Bogalusa, for plaintiff.
John W. Anthony, Talley, Anthony, Hughes & Knight, Bogalusa, for defendants.
Before SARTAIN, COVINGTON and LOTTINGER, JJ.
COVINGTON, Judge.
This is an appeal from a judgment awarding the plaintiff, Carl L. Mitchell, $20,088.40 damages for personal injuries and related expenses including $17,500.00 for pain and suffering. We reverse.
This action arises out of an incident which occurred at about 12:30 a. m., early Sunday morning, on August 4, 1974, in which the plaintiff, 19 years of age, was run over by a patrol car operated by Lannie Sigrest, a deputy sheriff for Washington Parish, one of defendants herein. The liability insurer, Southeastern Fidelity & Casualty Company, was also named a party defendant.
The Lakeview area where the incident occurred is an unincorporated business area located on State Highway 10 outside the city of Bogalusa, Louisiana, lying between the city limits and the Pearl River. The last business establishment on the south side of the highway before reaching the river is the Green Door Lounge. The business establishment immediately to the west of the bar is a motorcycle repair shop known as Brad's Cycle Shop. The area in question, due to numerous burglaries, break-ins and thefts over a period of time, has been classified by local law enforcement officials as a "high-crime area."
On the evening before that Sunday morning, the plaintiff began drinking at the Green Door Lounge. After admittedly drinking approximately 20 bottles of beer, the plaintiff left the bar in such a drunken condition that he was only able to go a short distance before "passing out" flat on his back in a graveled driveway, which ran along the west side of the Cycle Shop.
Meanwhile, Deputy Sigrest was patrolling this area as one of his regular law enforcement duties. As Sigrest approached the vicinity of the bar and cycle shop, he noticed a motor vehicle in the rear of the bar. The circumstances and the lateness of *143 the hour aroused the suspicions of the deputy, so that he turned off his headlights, slowed his patrol car, and moved toward the parked vehicle in a cautious manner. To reach the scene, the deputy slowly drove, with his headlights off, along the driveway on the west side of the cycle shop. It was while Sigrest was thus proceeding in his patrol car that he ran over the plaintiff, Carl L. Mitchell, who was lying unconscious in the driveway, which was described as made of mainly pea gravel and grass, some patches up to 18 to 24 inches in height. Investigating officers described the area in which the accident occurred as not being illuminated, although there appears to have been a night light behind the two buildings.
After hearing the testimony and considering all of the evidence, the trial court found that both Mitchell and Sigrest were negligent but, that, under the last clear chance doctrine, Deputy Sigrest was responsible for the injuries inflicted upon the plaintiff.
We have reviewed the evidence, the factual bases for the decision of the trial judge, and the applicable law. It appears that last clear chance was developed by the jurisprudence of this state in order to temper the harsh effects of the doctrine of contributory negligence. See Rozas, The Last Clear Chance Doctrine in LouisianaAn Analysis and Critique (Comment), 27 La.L.Rev. 269 (1967). Thus, last clear chance does not come into play until the evidence shows negligence on the part of both the plaintiff and the defendant. Hebert v. Meibaum, 209 La. 156, 24 So.2d 297 (1945); Butler v. State Farm Mutual Automobile Insurance Co., 265 So.2d 252 (La. App. 1 Cir. 1972); St. Amant v. Travelers Insurance Company, 233 So.2d 23 (La.App. 4 Cir. 1970); Malone, Torts, 22 La.L.Rev. 338, 344 (1962).
The jurisprudence has established that the essential elements of that doctrine are that: 1) the plaintiff was in a position of peril of which he was unaware or from which he was unable to extricate himself; 2) the defendant actually discovered the plaintiff's peril or could have, by the exercise of ordinary and reasonable care, discovered the plaintiff's peril; and, 3) at that time, the defendant could have, with the exercise of ordinary and reasonable care, avoided the accident. Burnett v. Marchand, 186 So.2d 383 (La.App. 1 Cir. 1966); Gregoire v. Ohio Casualty Insurance Co., 158 So.2d 379 (La.App. 1 Cir. 1963), writ ref. 245 La. 730, 160 So.2d 595 (1964).
Under our settled jurisprudence a litigant relying upon the last clear chance doctrine has the burden of proving all facts and circumstances necessary to its application, and before the doctrine can be applied the essential elements must be established by a preponderance of the evidence; they will not be presumed. Kontomitras v. New Orleans Public Service, Inc., 314 So.2d 441 (La.App. 4 Cir. 1975); Amacker v. Kirby, 224 So.2d 18 (La.App. 1 Cir. 1969), writ refused 254 La. 794, 226 So.2d 922; Williamson v. Aetna Insurance Co., 195 So.2d 763 (La.App. 1 Cir. 1967), writ ref. 250 La. 643, 197 So.2d 898 (1967).
Each case must stand or fall on its own peculiar facts in accord with the established principle that the negligence of a defendant, and his consequent liability to an injured plaintiff, is to be determined in the light of the circumstances of each particular case. Gregoire v. Ohio Casualty Insurance Co., supra.
The first element essential to the application of last clear chance in the instant case is not seriously questioned, and this element is established by the evidence. The plaintiff was in a position of peril of which he was unaware. He was lying prostrate, in a drunken stupor, at night, in a driveway which was used as a passageway for motor vehicles.
In resolving the next element of last clear chance, namely, whether the defendant could or should have discovered the plaintiff's plight by the exercise of ordinary and reasonable care, we consider that the unusual, extraordinary and unexpected nature of the object or obstruction in the driveway, thus created by the plaintiff lying prostrate by reason of voluntary intoxication, is determinative of this issue.
*144 The trial court found that the defendant should have discovered the plaintiff's peril in time to have avoided the accident.
The trial judge found that the grass in the area where the plaintiff was lying at the time of the accident was short and not dense, that the area where the plaintiff was lying was located next door to the Green Door Lounge behind Brad's Cycle Shop, and that the area where the plaintiff was lying was illuminated by the light from a night-light on a pole behind the buildings.
With this pictured scene in mind, the trial judge concluded that:
". . . Deputy Sigrest did not avail himself of the last clear chance to avoid the injury. He did not discover the perilous situation of Mr. Mitchell which he would have done if he had exercised the measure of caution and care which the circumstances of the location and his driving without lights required of him."
There is no longer any room for questioning the first premise of appellate review, that the factual findings and conclusions of the trial court must be accorded great weight and must not be disturbed in the absence of manifest error. See Canter v. Koehring Company, 283 So.2d 716 (La. 1973); Alexander v. St. Paul Fire & Marine Insurance Co., 312 So.2d 139 (La.App. 1 Cir. 1975), writ den. 313 So.2d 846 (La.1975).
In reviewing this case we are not unmindful of the Louisiana Supreme Court's admonition in the recent case of Dyson v. Gulf Modular Corp., 338 So.2d 1385 (La. 1976), that:
"An appellate court is simply not free to substitute its own version of the facts, however reasonable it may be, for that found by the trial court, unless the lower court committed manifest error by finding facts not reasonably supported by credible evidence in the record."
This, of course, does not mean, as we conceive of our role as an intermediate appellate court, that we merely rubber-stamp the trial court's version of the facts. As we view the Supreme Court's admonition, it simply calls upon us to appreciate our role and function as a reviewing court. As a reviewing court, we are constitutionally bound to review both the facts and the law found and applied by the trial court. A review, by definition, is not a new view of the facts and the law of a particular case; it is a judicial (and hopefully, judicious) reexamination by a higher court of facts and law already viewed by a lower court. In brief, we review, not re-try. As an appeal court, we do not hold a second trial of a caseeach litigant is entitled only to his own "day in court." In that context, we do not provide "another" court-day.
In reviewing the law, as an appellate court, we are in just as good a position as the lower court to interpret the statutes and jurisprudence applicable to a given set of facts and to decide a case based on that law. Therefore, in that respect we are not bound by a "cold record" in construing and applying the law. However, when it comes to reviewing the facts, we, as an intermediate appellate court, are clearly not in as good a position as the trial court to find the facts of a given situation. The trier deals face-to-face with the litigants and their counsel and sees the witnesses eye-to-eye as the situation giving rise to the action is verbally reenacted. His function as trier of fact naturally places him in a better position to determine the credibility of a witness and the proper weight to be given to a witness' testimony. Thus, as reviewer, we are not to find facts anew; we are not to substitute our version of facts for the trial court's version. Rather, our function is to review the facts as found by the trier of fact in order to determine whether they are reasonably supported by credible evidence in the record. When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a rational factual basis for his finding, we should not, and do not, disturb this finding. See Canter v. Koehring Company, supra.
Our meticulous review in this case leads us to the conclusion that certain material facts as found by the trial court are not reasonably supported by credible evidence in the record.
*145 We find that the trial judge in the instant case committed manifest error in the following factual findings which are material to a resolution of the indispensable second element of last clear chance:
In his "Reasons for Judgment," the trial judge stated:
"The point of the accident was beyond the driveway in the grass, described as being approximately 16 to 18 inches in height. It was behind Brad's Cycle Shop which is next door to the Green Door Lounge, and off the graveled passageway." (emphasis supplied)
The evidence just does not support the finding that the point of the accident was behind Brad's Shop; the accident happened on the west side of the Shop. All of the evidence leads only to the conclusion that at the time of the accident the plaintiff was lying prone on his back, partially in the driveway, on the west side of the Shop.
Deputy Sigrest was in California at the time of the trial. His statement, given on the date of the accident, was introduced and read into the record without objection. It places the accident on the west side of Brad's cycle Shop, in the driveway. Deputy Leroy Lively, in the first vehicle to arrive at the scene after the accident, saw Mitchell lying on the side of Brad's Cycle Shop when he got there. Deputy Ray Martin testified that he saw Mitchell lying on the west side of Brad's Cycle Shop with his head toward the building, flat on his back. Deputy Earl Seals, who was patrolling with Deputy Martin, corroborated his testimony relative to Mitchell's location when they arrived. None of the testimony places the location of the accident as being behind the Cycle Shop.
With regard to the length of the grass, the trial judge stated in his "Reasons for Judgment" that:
"From the photographs it appears that the grass was loose as contrasted from weeds which are stiff and tend to stand more erect. It appears to be thin and in the area nearest the building fairly well trampled down. This could have resulted from the number of people and vehicles taking part in the investigation.
"I do not find it to have been a dense grass in which a prone human body could have been obscured from view from one approaching slowly in an automobile with the head lights on."
This factual finding and the inferences drawn therefrom by the trial judge are not supported by credible evidence. Chief Deputy Walker B. Smith, Jr., stated the grass was 12 to 18 inches high. Sigrest gave the height of the grass as 18-24 inches. Lively testified that the grass ranged in height up to 24 inches but that it was mainly "in the 12 to 16 inch range." Deputy Martin placed the height of the grass at 14 to 18 inches, while Sergeant Donald Penton, of the Bogalusa Police Department, testified: "The grass was pretty high. I would estimate it sixteen, seventeen inches. It was real high." Deputy Seals said the grass was 16 to 18 inches tall. The only testimony that the grass was short was that of the plaintiff's brother-in-law, David Jenkins. It is interesting to observe that the shortness of the grass on behalf of the plaintiff was presented in this fashion:
"Q. When you went to the scene, what did you find?
A. Well, I found the grass where Skipper (Mitchell) was laying was short.
Q. What did you do then?
A. Went home and got my camera and came back and took some pictures of the area."
This testimony of Jenkins is not corroborated by any disinterested witness. The testimony of the disinterested witnesses should have been given greater weight by the trial court than that of such interested witness. See Alexander v. St. Paul Fire & Marine Insurance Co., supra.
We now consider the question of illumination in the area where the accident occurred.
In his original "Reasons for Judgment" the trial judge found that the testimony did not touch on the "relative intensity of the darkness"; afterwards in an addendum, the *146 trial judge pointed out that this finding was incorrect, calling attention to a diagram on the accident report which indicated that there was a pole with a night light behind the buildings. The trial judge then stated in this connection:
"The diagram also locates a `pole with nite lite' near the street or the edge of the graveled driveway, but with the notation `not working at time of accident'. The absence of such notation with respect to the `pole with nite lite' behind the buildings, must be construed to mean that it was in working order at the time of the accident. This indicates that the area in question was not in total darkness."
This finding, based upon negative inference, conflicts with the positive evidence in the record. The testimony of the law enforcement officers shows that the area where the plaintiff was lying was in darkness; there was no illumination. Deputies Lively, Martin and Seals so testified.
In addition, the accident report filed in the record, contains the following statement of the reporting officer:
"Deputy Sigrest stated that he was checking the business places in the Lakeview area and he turned his headlights off as he entered the driveway on the west side of Brad's Cycle Shop. Due to the grass and shadows he didn't see the subject lying in the drive." (Emphasis added)
As the testimony of these witnesses is the only positive, credible evidence in the record regarding illumination of the driveway, we find as a fact that at the time of the accident there was no illumination of that area of the driveway where the accident occurred. The inferences drawn by the trial judge from a diagram on the accident report can not prevail over the testimony of the eye-witnesses. See Demandre v. Robinson, 220 So.2d 542 (La.App. 4 Cir. 1969). The evidence does not support conclusions that the grass was "short and not dense", and that the accident occurred "behind" Brad's Cycle Shop. These factual findings are not reasonably supported by credible evidence.
Counsel have not cited, nor has the court been able to find, any cases exactly in point. However, counsel for the appellant has cited the jurisprudence that the operator of a motor vehicle on a highway at night is not charged with the duty of guarding against unusual or unexpected obstructions in the roadway which he has no reason to anticipate he would encounter and which, under the circumstances, are difficult to discover. See Tauzier v. Bondio, 237 La. 516, 111 So.2d 756 (1959); Corkern v. McWilliams, 228 So.2d 236 (La.App. 1 Cir. 1969); Sanders v. Eilers, 217 So.2d 205 (La.App. 1 Cir. 1968); LeBlanc v. Aetna Casualty & Surety Co., 162 So.2d 153 (La.App. 3 Cir. 1964); Gregoire v. Ohio Casualty Insurance Co., supra.
In the case of Corkern v. McWilliams, supra at 237 the court stated:
"Plaintiff admits his own negligence, but claims that defendant had the last clear chance to avoid the accident. He claims that Mr. King should have seen him sooner, and, had he done so, he would have been able to avoid the accident.
"We cannot agree. We find the applicable law to have been expressed in the case of Sanders v. Eilers, 217 So.2d 205 (La.App. 1 Cir. 1968) as follows:
"The rule is well established that one who operates a motor vehicle on public highways has a never ceasing duty to keep a sharp lookout ahead. A motorist is therefore held to have seen that which in the exercise of ordinary care he should have seen. Rottman v. Beverly, 183 La. 947, 165 So. 153; Jackson v. Cook, 189 La. 860, 181 So. 195. Thus, though as a general rule a motorist may assume that the road ahead is safe for travel, he must when traveling after darkness or in circumstances of limited or impaired visibility observe and so control his vehicle as to avoid discernable objects in his path of travel; that is, in adverse conditions a greater degree of care must be exercised. Watkins v. Strickland Transportation Co. (1956), La.App., 90 So.2d 561, and Hernandez *147 v. State Farm Mutual Automobile Insurance Company (1966), La.App., 192 So.2d 679. This last rule however is subject to the well established exception that a night driver is not charged with the duty of guarding against unusual or unexpected obstructions which he had no reason to anticipate he would encounter on the highway and which under the circumstances are difficult to discover. Gregoire v. Ohio Casualty Ins. Co., La. App., 158 So.2d 379; Gros v. United States Fidelity & Guaranty Co., La.App., 183 So.2d 670.'
"In this case, the plaintiff was lying on a blacktop road, at night, wearing dark trousers. Mr. King stated that he was ten or fifteen feet from plaintiff when he realized there was a man lying in the road, rather than a branch or log, and that he immediately applied his brakes and swerved to the right. We do not think that Mr. King, under the circumstances of this case, was negligent in failing to observe plaintiff sooner than he did, and that it was then too late for him to avoid the accident."
We are of the opinion that the last clear chance doctrine is not applicable to the instant case, because the evidence does not show that Deputy Sigrest should have discovered the plaintiff's peril at such time as he could have, by the exercise of reasonable care, avoided the accident.
In the instant case, the plaintiff was lying in a partially overgrown driveway, at night, wearing blue jeans. Deputy Sigrest stated that he had already driven over the prone body before he realized that there was a man lying in the roadway, rather than a "fence post". An unconscious person lying partially across a roadway, even though it may be one that is not traversed by numerous vehicles each day, is not such an object that a driver of a motor vehicle could, nor should, anticipate. We do not think that Deputy Sigrest, under the circumstances of this case, was negligent in failing to observe the plaintiff sooner. See Corkern v. McWilliams, supra. When he did, it was then obviously too late for him to avoid the accident because it had already happened. It cannot be said that it was unreasonable for the deputy to assume that no person would be lying unconscious in the driveway at that hour of the night.
We hold that the doctrine of last clear chance is unavailable to the plaintiff herein for the reason that the defendant did not discover and, under the circumstances shown, could not have discovered the presence of the plaintiff in the driveway in time to avoid the accident.
Accordingly, the judgment of the trial court is reversed and the plaintiff's suit is dismissed at plaintiff-appellee's costs.
REVERSED.