COLE, Judge.
Plaintiff’s son, 16 year old Timmy Woodard, was injured when his motorcycle collided with a tractor-trailer logging truck owned by defendant Elvin Mays. Plaintiff filed suit, both individually and on behalf of his minor son, against these defendants: Elvin Mays; M. L. Howard, the driver of *1306 the truck; Parish Wood Products, Inc., the alleged employer of Mays and Howard; and Louisiana Farm Bureau Mutual Insurance Company, plaintiff’s uninsured motorist carrier. Parish Wood Products was dismissed in a partial judgment and that judgment has not been appealed.
After a lengthy trial on the merits the district court found defendants Mays and Howard were negligent but Timmy’s contributory negligence barred his recovery. Plaintiff has filed this devolutive appeal.
The accident occurred on January 8,1979, on Louisiana Highway 38, a rural road in Washington Parish near the Mississippi-Louisiana state line. Timmy Woodard was traveling south on the highway when he approached a curve of almost 90 degrees to the right. Testimony at trial revealed irreconcilable versions of how the accident occurred. M. L. Howard and Elvin Mays both testified their logging truck was parked partially on the shoulder of the northbound lane and partially on the roadway. Timmy testified the truck was not on the shoulder at all but was positioned diagonally across the road, with the front end of the truck in the southbound lane and the back end partially in the northbound lane. Both sides testified the truck was facing south.
In written reasons for judgment the trial court solved the conflicting versions as follows:
“. .. In light of the testimony of these witnesses and the record, this Court does not believe the testimony of M. L. Howard and Elvin Mays concerning how this accident happened. Insofar as the positioning of the truck right before the accident is concerned, this Court accepts the testimony of Timmy Woodard and accordingly, finds that this accident happened in the manner related by Timmy Woodard.”
We have carefully examined the record and find no manifest error on the part of the trial court. There were no eyewitnesses to the accident, therefore the court had no choice but to decide which version of the accident was the most credible. Aside from that of the parties involved in the accident, the only other pertinent testimony was that of W. D. Kennedy. He testified he was driving his logging truck on Highway 38 and arrived at the scene shortly after the accident occurred. He approached the scene from the south (the opposite direction from which Timmy was traveling) and stated he saw a logging truck “blocking the road” so that the truck had to move in order for Kennedy to get by. He described the truck as having the front wheels off the center line and the back wheels on the edge of the blacktop, leaving only a six foot space of roadway unblocked. This description puts the truck in the same general position as described by Timmy.
Unfortunately the truck driven by Howard was moved very soon after the accident occurred so that no other witnesses could testify as to its initial position. Corrine Freeman testified she had been traveling on this road, directly behind Mr. Kennedy. When she came upon the scene the Howard truck was already being moved up the road and ultimately pulled off onto the southbound lane’s shoulder. Deputy Sheriff Melvin Garrett stated that when he arrived at the scene the truck had already been moved to this same position.
As always, this court grants much discretion to the trial court’s factual conclusions and will not disturb the findings unless we feel manifest error has been made. Canter v. Koehring Company, 283 So.2d 716 (La.1973), rehearing denied 1973. This court stated the matter quite clearly in an earlier opinion.
“. . . However, when it comes to reviewing the facts, we, as an intermediate appellate court, are clearly not in as good a position as the trial court to find the facts of a given situation. The trier deals face-to-face with the litigants and their counsel and sees the witnesses eye-to-eye as the situation giving rise to the action is verbally reenacted.” Mitchell v. Sigrest, 345 So.2d 141 (La.App. 1st Cir. 1977), at p. 144.
We feel there is enough evidence in the record to justify the trial court’s decision to *1307 believe Timmy’s version of how the accident occurred.
Just as there were conflicting accounts as to the position of the truck, the parties related different versions of how the impact actually occurred. M. L. Howard stated that as he sat half-asleep in the cab of the truck (parked on the side of the road) he felt a “bump” which was Timmy’s motorcycle colliding with the truck. Timmy testified he saw the truck blocking the road and began to apply gradually his back brake. He determined he could get past the truck by passing around the left rear end on a small portion of the northbound lane. He crossed over from the southbound lane into the northbound lane and was positioned immediately behind the left rear end of the truck. (He estimated the distance to be about four feet.) The trial court concluded that Timmy’s motorcycle was then going about five miles per hour when the truck suddenly began to back up. Timmy was unable to complete his maneuver around the truck and the bumper of the truck struck the right midportion of Timmy’s motorcycle, causing him to be knocked to the ground. He sustained serious leg injuries.
Again it is evident from the trial court’s statement quoted above that the court believed Timmy’s version of the accident. We again defer that decision to the trial court because it is solely a matter of credibility. Canter, supra.
Plaintiff raises four errors to be considered here. First, he contends the trial court erred in finding Timmy to be contrib-utorily negligent. We agree with the court’s conclusion that Timmy’s behavior fell below the standard of reasonable care. There are two aspects to Timmy’s negligence. One is that he failed to bring his motorcycle to a complete stop before attempting to get around the truck on the extremely narrow portion of the road. The other is that he was careless in allowing his motorcycle to come so close to the rear of the truck that he had no means of escape when the truck began to back up. On the former point the court had this observation.
“... It is hard for this Court to understand how any reasonable man could believe that he could safely pass through this narrow lane without first stopping his vehicle and taking just a few moments to survey the situation before attempting to pass through such a narrow path.”
We note the expert testimony offered by both sides established Timmy had more than ample time to stop his motorcycle before attempting to go around the truck. Defendant’s accident investigation expert, Colonel Joseph Andre, testified Timmy should have been able to see the logging truck from 200 feet away. Even using the more conservative estimate supplied by plaintiff’s accident expert, Richard Seal, Timmy had 110 feet in which to stop. Skid tests conducted by Colonel Andre showed that if Timmy was traveling at 20 miles per hour[1] he could have come to a complete stop within 35.2 feet. This is based on 22 feet reaction time and 13.2 feet of braking time.
Timmy testified he did not want to “slam on” his brakes because of his rather precarious position in a sharp curve. It was not until he realized the truck was backing up that he attempted to bring his motorcycle to a complete halt. We can understand his caution on this matter but the evidence shows that he had at least 110 feet to come to a complete halt, and that if he had “slammed on” his brakes he could have stopped in 35.2 feet. Therefore it is obvious that even without a sudden application of his brakes he could have gradually stopped his motorcycle before reaching the truck. Instead, he chose only to slow down and to maneuver around the rear of the truck without ever coming to a complete halt.
The second aspect of Timmy’s negligence is his careless action of allowing his motorcycle to come within four feet of the truck. Common sense dictates that a logging truck *1308 found diagonally blocking a roadway is not going to remain in that position forever. Various photographs submitted at trial show that the rear of the truck was very near a gravel road which intersected with Highway 38. This fact makes it even more obvious that the truck was likely to be moving backward in order to reach the gravel road. A reasonable person would anticipate that a truck found in this position might be very likely to back up and would not get so near the rear of the truck so as to have no escape if the vehicle moved in a reverse direction.
Plaintiff’s second argument is that the court erred in rejecting the applicability of the “sudden emergency” doctrine. Without going into a detailed analysis of this theory, it is obvious that the court rejected it because the court did not find Timmy to be confronted with a sudden emergency. The evidence shows he could have brought his motorcycle to a complete stop in ample time to avoid putting himself so near the truck as to be injured when it backed up. Instead of so doing he chose to place himself in this position of great peril and therefore cannot try to exculpate himself by calling the situation a sudden emergency.
Plaintiff’s third argument is that the court erred in failing to apply the doctrine of last clear chance so as to allow Timmy to recover in spite of his contributory negligence. In order to use this doctrine the party relying upon it (the plaintiff) must prove three elements. First, the plaintiff must have been in a position of peril of which he was unaware or from which he was unable to extricate himself. Second, the defendant must have actually discovered the plaintiff’s peril or could have, by the exercise of ordinary and reasonable care, discovered the plaintiff’s peril. Third, at that time, the defendant must have been able, with the exercise of reasonable and ordinary care, to have avoided the accident. Mitchell, supra. However, before the doctrine can be applied the essential elements must be established by a preponderance of the evidence. They will not be presumed. Mitchell, supra; Kontomitras v. New Orleans Public Service, Inc., 314 So.2d 441 (La.App. 4th Cir. 1975).
There is no doubt that plaintiff has shown that at the moment of the accident he was in a position of peril from which he was unable to extricate himself. However, we find no evidence establishing that defendant could have discovered the peril by use of ordinary care or that he could have discovered the peril in time to avoid the accident. It is tempting to presume that had M. L. Howard looked in his rear view or side mirrors he would have seen the boy in time to avoid the accident, yet we cannot make this assumption. Although there was testimony establishing the truck had a rear view mirror, there was none concerning the existence of side mirrors, the angles of the mirrors, the height of the truck bed as opposed to the height of the motorcycle, or any of the other pertinent factors that would prove the defendant could have seen Timmy in time to avoid the accident. It must be noted the truck was at an angle in the road and Timmy crossed from the southbound lane to the northbound lane in his attempt to get around the truck. Without positive evidence we simply cannot presume that Timmy would have been in the driver’s vision for a length of time sufficient for the driver to stop the backward motion and avoid hitting Timmy. We are limited to the evidence presented at trial and we conclude there was not a preponderance of evidence establishing these aspects of the last clear chance doctrine.
Plaintiff’s final argument need not be discussed because it deals with the responsibility of its uninsured motorists’ coverage. Such coverage is not an issue since no defendants were held liable.
For these reasons, the judgment of the trial court is affirmed. Plaintiff-appellant is to pay all costs.
AFFIRMED.

. The trial court concluded that Timmy was traveling between fifteen and twenty miles per hour when he first saw the logging truck.