GRISBAUM, Judge.
This appeal arises out of a vehicular collision and resulting injuries. After a trial on the merits, judgment was rendered in favor of Mr. Don R. and Mrs. Janice Soulier and against defendants, Ted J. Gauthier and Highlands Insurance Company, in the amount of $1,177,729.78, plus legal interest. Defendant Highland Insurance Company appeals, and the original plaintiffs have answered the appeal seeking an increase in damages. We affirm.
*356 The basic facts show that the accident occurred at the intersection of Airline Highway and Almedia Road, which is located in St. Charles Parish, State of Louisiana. When the collision occurred, the Soulier vehicle was eastbound, while Gauthier’s vehicle was westbound and in the process of making a left-hand turn onto Almedia Road.
Two basic issues are presented:
(1) Whether the trial court erred in its assessment of liability, and
(2) Whether the damages awarded to either plaintiff are excessive or inadequate.
LIABILITY
The trial court, in its Reasons for Judgment, states:
When Mr. Gauthier reached the intersection of Airline and Almedia Road he attempted to make a left[-]hand turn onto Almedia Road and collided with the Soulier vehicle.
[[Image here]]
The record reflects and it is undisputed that Gauthier made his left[-]hand turn on a green light, not a green arrow. The fact that Mr. Gauthier’s left[-]hand turn was protected only on the green arrow is illustrated by a sign, which was located below the traffic signal, which indicated “LEFT TURN PROTECTED ON ARROW ONLY”.
Elsewhere in its Reasons, the trial court states,
Mr. Soulier testified at trial that at the time of the accident he was traveling about 30 to 35 mph. He further testified that Mr. Gauthier turned in front of his vehicle causing him to apply his brake. As a result[,] his vehicle skidded into the Gauthier vehicle.
The court further states,
The law in Louisiana is clear that before attempting to make a left[-]hand turn, a vehicle shall yield the right of way to vehicles approaching from the opposite direction. LSA-R.S. 32:122 provides:
The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto as to constitute an immediate hazard.
In its Reasons, the court continued to find,
Further, the jurisprudence has long required that an extremely high degree of care be exercised by a left turning motorist. In the event of a collision that motorist is presumed to be liable, it then becomes his burden to show that he was free from negligence in order to avoid liability.
The trial court further states,
After a close review and analysis of the facts and evidence adduced at trial, it is the determination of this Court that Ted Gauthier’s negligence was the sole cause of the accident.
We agree and the record amply supports there was more than a reasonable basis for the factual findings of the trial court.
DAMAGES
We now turn to view the damage awards to Mr. and Mrs. Soulier. It is with pleasure that we are able to quote the well-reasoned and clearly stated Reasons for Judgment by the trial court:
“Mr. Soulier was rendered unconscious by the accident and sustained injuries to his right knee, his chest, and his nose. Immediately following the accident Mr. Soulier was admitted to East Jefferson Hospital where he remained hospitalized until his discharge on December 21,1984. Upon his admission on December 11,1984, Mr. Soulier was seen by Dr. Charles Brown who diagnosed his condition as myocardial and pulmonary contusion, fractured right patella and nasal fracture. In addition[,] Mr. Soulier suffered multiple abrasions and contusions. Thereafter, he was examined by Dr. Truman Kerr, who qualified at trial as an expert in the field of orthopedic surgery. Dr. Kerr testified that his examination of Mr. Soulier revealed a comminuted fracture of the right patella. Thus, on December 13,1984[,] Dr. Kerr performed a partial patellectomy on Mr. Soulier and removed the distal portion of the patella.
“Subsequent to his discharge Mr. Soulier underwent an extensive course of physical *357 therapy. Michael Murphy, who qualified at trial as an expert in physical medicine and rehabilitation, testified that despite the intensive physical therapy to which Mr. Soulier was subjected, full range of motion and strength were not restored to Mr. Soulier’s right extremity.
“Further, Dr. Kerr testified at trial that Mr. Soulier continues to suffer weakness, loss of motion and strength, and pain in his right extremity. Thus, he assigned a 25 percent disability rating to Mr. Soulier. He additionally recommended that Soulier not return to his job as a carpenter because he did not feel that Soulier could perform any type of work which would require him to do any repetitive bending, stooping, crawling, squatting, lifting or climbing.
“It is the opinion of this Court that Mr. Soulier’s pain and suffering from the time of the accident throughout his recovery is well[-]documented. Accordingly, considering the magnitude of plaintiff’s injuries this Court awards ($200,000.00) for past and future physical and mental pain and suffering and disability.
“With reference to an award for past and future lost wages[,] this Court bases its decision on the testimony of Dr. Melville Wolfson, who qualified at trial as an expert in the field of economics. Dr. Wolfson calculated Mr. Soulier’s past lost wages to be $41,003.00. Further, Dr. Wolfson calculated his future loss of wages, based on the fact that he was 39 years old at the time of the trial and had a remaining work life expectancy of an additional 22.11 years. Additionally, it was the conclusion of Judith Lide, an expert in the field of Vocational Rehabilitation, that Mr. Soulier will only be able to perform minimum wage type jobs in the future. Thus[,] the Court concludes that Mr. Soulier shall be awarded $41,003.00 for past loss [sic] wages and $419,000.00 for future lost wages.
“Past medical expenses incurred by Mr. Soulier were stipulated to by counsel as $9,692.64. Therefore, this amount shall be awarded to plaintiff, Don R. Soulier. The Court also awards him $33,200.00 for future medical expenses to cover any additional care and treatment or physical therapy which Mr. Soulier will require.
“The Court additionally awards Mr. Sou-lier the sum of $74,970.00 for loss of the military retirement that he would have received from the Army National Guard. It is the opinion of this Court that had it not been for the injuries which he sustained as a result of the accident, Mr. Soulier would have remained in the Army National Guard for 30 years. However, due to his injuries he will have to retire after 20 years. Thus, this Court awards Mr. Soulier $74,970.00 which reflects the difference in what he would have earned had he stayed in the Army National Guard for 30 years, or $330.17 per month, and what he will receive after 20 years, or $183.61 per month.
“For loss of consortium[,] the Court awards Mr. Soulier $25,000.00. The Court finds that the marital relationship between Mr. and Mrs. Soulier was greatly affected as a result of the accident.
“Finally, the Court awarded Mr. Soulier the sum of $141.60, which he paid to rent a vehicle while his was being repaired.
“Having determined the amount of damages which Mr. Soulier shall be awarded, the next question which the Court must address is what amount shall be awarded to Mrs. Soulier. After reviewing the medical evidence and the facts, it is the conclusion of this Court that she shall be awarded $372,422.54. As a result of the accident[,] Mrs. Soulier was thrown forward so forcefully that her head broke the windshield. She was immediately taken, by ambulance, to East Jefferson Hospital. She continued to complain of severe headaches, [sic] therefore[,] on December 20, 1984[,] she was taken back to the East Jefferson Emergency Room. Thereafter, she was seen by Dr. David Aiken, Sr., who qualified at trial as an expert in occupational medicine. Dr. Aiken testified that Mrs. Soulier was suffering from nerve root compression in both the cervical and the lumbar areas. Dr. Aiken then referred Mrs. Soulier to Dr. David Aiken, Jr.[,] who stated that her pain was constant and increased upon physical activity. Further, he assigned a 10 percent permanent disability to Mrs. Soulier. He *358 additionally noted that the disability would limit her activity for the remainder of her life. He also diagnosed a thoracic outlet syndrome which causes pain and numbness to Mrs. Soulier when she raises her arm. However, because she could not find any relief for this problem, she was referred to Dr. Edna Doyle, an expert in the field of physical medicine and rehabilitation. She testified at trial that she diagnosed Mrs. Soulier’s condition as fibromyalgia or fibro-sitis in addition to post[-]tramatic [sic] stress syndrome. Considering all of the evidence it is the opinion of this Court that Mrs. Soulier be awarded $125,000.00 for past and future physical and mental pain and suffering.
“Dr. Jane Stennett also treated Mrs. Sou-lier as a result of the accident. She indicated that because of the injuries which Mrs. Soulier suffered, she was not able to attend beauty school or work full time as a beautician.
“Further, the Court is of the opinion that Mrs. Soulier will require future medical care for her injuries[;] thus[,] she shall be awarded the sum of $24,500.00 for future medical expenses. In addition, past medical expenses incurred by Mrs. Soulier amounted to $8,040.54. Thus, this amount shall be awarded to plaintiff, Janice Soulier.
“With reference to the issue of lost wages, the Court finds that from all the testimony of the experts that Mrs. Soulier shall be awarded the sum of $24,882.00.
“In addition[,] the Court recognizes that due to the injuries which Mrs. Soulier suffered as a result of this accident, her future earning capacity has been diminished. Thus, the Court awards her $165,000.00[.]
“Finally, the Court awards Mrs. Soulier $25,000.00 for loss of consortium due to the fact that this accident had a detrimental effect on her marriage.”
LAW
In viewing damage awards, we must be ever mindful of our standard of review, which was well-articulated by the Louisiana Supreme Court in Reck v. Stevens, 373 So.2d 498, 501 (La.1979) as follows:
Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court detr-mine that the award is excessive.
Moreover, we find it appropriate to quote our brother, Judge Fred S. Bowes, who stated in Elmwood Plantation v. Ruud Water Heater Div., 435 So.2d 507, 511-12 (La.App. 5th Cir.1983), citing Mitchell v. Sigrest, 345 So.2d 141 (La.App. 1st Cir.1977), that
As a reviewing court, we are constitutionally bound to review both the facts and the law found and applied by the trial court. A review, by definition, is not a new view of the facts and the law of a particular case; it is a judicial (and hopefully, judicious) reexamination by a higher court of facts and law already viewed by a lower court. In brief, we review, not. re-try. As an appeal court, we do not hold a second trial of a case— each litigant is entitled only to his own “day in court.”
Thus, as a reviewer, we are not to find facts anew; we are not to substitute our version of facts for the trial court’s version. Rather, our function is to review the facts as found by the trier of fact in order to determine whether they are reasonably supported by credible evidence in the record. When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a rational factual basis for his findings, we should not, and do not, disturb this finding, (emphasis in the original)
ANALYSIS
In light of our jurisprudential mandate, and after a careful and exhaustive review of the deposition and trial testimony, although we are “tempted” to reduce some aspects of each of the plaintiffs’ awards, and, at the same time, increase other aspects of each of the plaintiffs’ awards, we *359 must admit that our analysis of the facts and circumstances peculiar to each of the plaintiffs and their individual circumstances lead us to the inevitable conclusion that there was sufficient evidence before the trier of fact, which, upon its reasonable evaluation of credibility, furnished a factual basis for its findings, and, there being no manifest error, we cannot and will not disturb its findings.
Other issues have been raised, which have no merit.
For the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal are to be assessed against the appellant.
AFFIRMED.